RICHARD E. NELSON, Plaintiff-Appellee, *v.* HYDRAULIC PRESS MANUFACTURING COMPANY, Defendant-Appellant.

Second District   No. 78-542

Opinion filed May 6, 1980.

Gates W. Clancy and James S. Mills, both of Geneva, for appellant.

John M. Boreen, of Lawrence J. Ferolie & Associates, of Rockford, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

This product liability case involves an action for damages for personal injuries brought against the manufacturer of a certain plastic injection molding machine by a machine maintenance man who sustained bodily injuries as a result of an accident involving the machine. The cause was submitted to the jury under the theory of strict liability in tort; the

jury returned a verdict for the plaintiff in the amount of $75,000 upon which judgment was entered. The defendant appeals.

Hydraulic Press Manufacturing Company (hereinafter H.P.M.) designed, manufactured and sold to Precision Castings Company (hereinafter Precision) a plastic injection molding machine, model number 125-IX-8, serial number 68-386. This particular machine melts raw plastic and shoots it into molds thereby making various plastic parts. The machine arrived at Precision in early February 1969. At the time of the accident on July 17, 1970, the plaintiff, Richard E. Nelson, was employed by Precision as an industrial electrician and maintenance man.

The machine in question consists in part of a hopper head with a cover, directly beneath which is a small feed hole. Beneath the feed hole is a long, single stage, reciprocating screw which turns. This extruder screw is encased in a barrel, and certain heater bands are attached at various points along the barrel. At the end of the screw is a nozzle head or tip through which the molten plastic is injected into a mold. Also near the end of the screw is a nonreturn or check valve, which apparently is designed to prevent hot plastic from coming back through the screw area and out the feed hole. Raw material is placed into the hopper and passes through the feed hole into the screw area. The turning or reciprocating action of the screw forces the screw to move back or retract as the material is forced forward and the screw is readied for the injection cycle. When enough heated material has accumulated in the front area of the screw, the screw is driven forward with a great deal of force with the molten plastic being injected through the nozzle into the mold. This process of movement and operation is repeated every 10 seconds or so.

The record indicates that on the day of the accident the machine had been shut down and employees of Precision were attempting to purge the machine of old plastic material which had remained in the machine overnight after the previous day's operation and which had hardened as a result. To purge the machine of old material, new material is placed into the machine through the hopper, and the combined material is heated to the desired temperature. Then the material is run through the screw and shot out the nozzle. On this particular occasion, the employees were unable to purge the machine due to the fact that the reciprocating screw would not return or retract. After determining that there was a clog or plug of hardened material in the feed hole and screw area, an employee removed the hopper cover and head and climbed a ladder in order to gain better access to the area that was plugged or blocked. A brass rod was then used to tap or jab the plug in an attempt to dislodge the material creating the blockage.

While these employees were in the process of attempting to dislodge or break up the plug of plastic material, the plaintiff, who happened to

pass by, was informed of the problem. In attempting to ascertain the exact nature of the problem, the plaintiff first looked into the feed hole through a glass-covered opening in the side of the machine and saw that there was a blockage problem. He then ascended the ladder in order to view the blockage problem from above. He remained on the ladder for a few seconds while he observed the problem. Evidence adduced at trial indicates that the plaintiff did nothing to the machine while he was on the ladder. He did not poke the brass rod or any other object into the feed hole, nor did he put his hands into the feed hole. As he was descending the ladder, the plaintiff was hit on the right side of his head and face by molten plastic which had erupted from the feed hole area. Plaintiff was knocked from the ladder when the molten plastic hit him. As a result of this accident, he sustained severe burns to the hands, face, and right ear as well as other bodily injuries resulting from the fall. On the following day, employees of Precision removed the nozzle head from the screw, at which time it was determined that the nonreturn or check valve was broken into a number of pieces.

■■ Defendant contends that the court erred in not granting its motion for judgment *n.o.v.* or, in the alternative, its motion for a new trial. To be entitled to a judgment *n.o.v.*, the defendant must establish that all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that no verdict in favor of the plaintiff could ever stand. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) Similarly, to establish successfully that defendant is entitled to a new trial, the trial court must find that the verdict of the jury is contrary to or against the manifest weight of the evidence. *Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 36; *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310; *Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 126.

The plaintiff's second amended complaint alleged in substance (1) that the machine in question was not reasonably safe when it left the defendant's control because it lacked proper instructions for operation and maintenance and was devoid of any warning that molten plastic might erupt from the hole beneath the feed hopper; (2) that the defendant knew or should have known of such dangerous condition; and (3) that the plaintiff's injuries were a direct and proximate result of the unsafe condition of the machine. Having been denied by the defendant, these allegations are the issues which plaintiff had to prove.

■■■ More narrowly, at trial the plaintiff contended that it was the failure to warn or instruct about the potential danger from the eruption of molten plastic from the hole beneath the feed hopper during maintenance operations which was sufficient to constitute an unreasonably dangerous or defective condition in the machine. The adequacy or inadequacy of

the warning given by the manufacturer may be the essential issue in determining whether the product is unreasonably dangerous for purposes of strict liability. (*Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 551.) The failure to warn may itself be the defective condition which causes injury in a strict product liability case. (*Williams v. Brown Manufacturing Co.* (1968), 93 Ill. App. 2d 334, 360, *rev'd on other grounds* (1970), 45 Ill. 2d 418; *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 515-16.) The focus in these cases is on the nature of the product and on the adequacy of the warning rather than on the conduct of the manufacturer, and in such cases the plaintiff is required to plead and prove that the defendant manufacturer knew or should have known of the danger that caused the injury and that the defendant manufacturer failed to warn plaintiff of that danger. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 35, *aff'g Woodill v. Parke Davis & Co.* (1978), 58 Ill. App. 3d 349; see *Knapp v. Hertz Corp.* (1978), 59 Ill. App. 3d 241, 246.) In this case plaintiff has brought himself within the concept of these cases by pleading that the defendant manufacturer knew or should have known of the dangerous condition which caused plaintiff's injuries and failed to warn or instruct about the potential danger. In determining what precautions are required, the likelihood of harm and the gravity of harm are balanced against the burden to the manufacturer of taking the precaution which is necessary to avoid the harm or injury. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1967), 86 Ill. App. 2d 315, 325-26, *aff'd* (1969), 42 Ill. 2d 339.) Generally, the question whether an alleged defect creates an unreasonably dangerous condition is one of fact to be determined by the jury. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13; *Richelman v. Kewanee Machinery & Conveyor Co.* (1978), 59 Ill. App. 3d 578, 583; *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925, 932, *appeal denied* (1977), 65 Ill. 2d 580.

■ The manufacturer's liability is properly limited to those persons "to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 11.) The foreseeable use of a product is different from its intended use and includes any particular use which should be known to a reasonably prudent manufacturer. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1967), 86 Ill. App. 2d 315, 328.) Thus, a manufacturer may be held liable for injury or damage caused by an unintended use of a product if the use is one which it may have reasonably foreseen. *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 330, *modified* (1979), 76 Ill. 2d 154; *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 344, *appeal denied* (1974), 56 Ill. 2d 582.

A consideration of the evidence in this case in light of the established principles of strict product liability law set forth above reveals the following. The record establishes that the machine in question was not labelled with any warnings regarding the potential danger of molten plastic erupting through the feed hole. In this regard the machine was in the same condition on the day of the accident as it was when it left the manufacturer's control.

However, several warnings designed to assure safe operation were present on the machine. In particular, one warning stated that neither hands nor anything else should be placed inside the machine when the hopper was off due to the danger created by the movement of the reciprocating screw. Another warning plate stated that the screw should not be operated while the hopper was removed from the machine or while clearing obstructions. Uncontradicted evidence adduced at trial indicates that the warnings which were on the machine at the time of the plaintiff's accident were the same warnings that were on the machine when it arrived at Precision. No warnings were removed or added by Precision.

■■ The plaintiff's safety expert indicated that in his opinion the warnings which were on the machine were inadequate for all of the functions of the machine and that an adequate warning regarding the hazard of hot plastic erupting from the machine would have prevented the injury here. He also testified that the machine was unduly hazardous in its present condition, because molten plastic would be forced with great force from the hopper if the nonreturn or check valve were to fracture. His testimony also demonstrated that H.P.M. was aware of the danger of molten plastic spattering from the extruder portion of the machine during the purging operation and had installed a transparent extruder cover as a safety device. In his opinion, a similar device could have been installed, at low cost, to serve as a protective lid or cover for the hopper, and such a device would have allowed a maintenance worker to view the blockage problem without removing the cover. The defendant presented no witnesses or evidence to controvert this testimony. In addition, no evidence was adduced at the trial indicating either that the plaintiff or anyone else employed at Precision was aware of the potential danger of molten plastic erupting from the machine or that the danger was obvious. In view of the evidence here, the question whether the machine was in an unreasonably dangerous or defective condition as a result of the failure to provide adequate warning was a question of fact for the jury. Similarly, the question whether H.P.M. knew or should have known of the danger such that it had a duty to warn of the hazard of molten plastic erupting from the feed hole area of the machine properly rested with the jury.

Furthermore, there was evidence before the jury from which it could have inferred that the manufacturer should have realized that in the event of a blockage or stoppage of the machine, steps would be taken by the employees of Precision to correct the problem, including removal of the hopper cover and head. One of Precision's foremen testified that on previous occasions the reciprocating screw would not retract or return and that one of defendant's servicemen had visited Precision to correct the problem. This serviceman had not advised the foreman or other employees of Precision what to do in case there was a blockage in the feed hole; had never informed him that the hopper head should not be removed from the machine for any reason; had never informed him that the nozzle head should be removed or dismantled when there was a clog in the feed hole; and had never explained what the warnings on the machine meant. He also testified that there was nothing in the operator's manual warning either that the hopper head should not be removed if there was a blockage in the feed hole or that there was any danger of hot plastic coming up through the feed hole.

Other employees, including the plaintiff, generally corroborated this testimony. There was also testimony that the screw was not being operated while the employees had the hopper head off and were trying to dislodge the obstruction, because the screw was not turning or reciprocating and hence was not operational.

Defendant raises the question of misuse, an acknowledged bar to an action based on strict tort liability. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 425, 431; *McCormick v. Bucyrus-Erie Co.* (1980), 81 Ill. App. 3d 154, 162.) The misuse of a product by the plaintiff which will defeat his strict liability action has been defined, using an objective standard, as a use for a purpose neither reasonably foreseeable nor intended by the manufacturer. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 425; *Gallee v. Sears, Roebuck & Co.* (1978), 58 Ill. App. 3d 501, 503.) Also, the overall question of misuse is ordinarily one of fact for the jury to determine. *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 102; *McCormick v. Bucyrus-Erie Co.* (1980), 81 Ill. App. 3d 154, 162. ■ The record establishes that the plaintiff, a maintenance man whose job it was to repair and maintain Precision's industrial machinery, was working on the machine at the time of the accident. More specifically, he was observing the blockage problem from a ladder. At this point, the hopper head had already been removed from the machine; the machine was on; and the heat was at a high temperature. There is no evidence that indicates that the plaintiff did anything to the machine while he was standing on the ladder. He did not poke or hammer the material in the machine with a brass rod or any other object. Evidence also indicates that

there was no warning on the machine or in the operator's manual indicating that the hopper cover or head should not be removed if there was a clog beneath the feed hole. Likewise, there was no evidence in the record establishing the presence of any warning stating either that the machine should be shut off if there was a blockage in the feed hole or that the nozzle head should be removed or dismantled to ascertain the problem before attempting to dislodge the blockage. Given these facts, it cannot be said as a matter of law that either the presence of the plaintiff or his acts were unforeseeable by H.P.H. or that the plaintiff's conduct constituted a misuse of the product that made it unreasonably dangerous or was a proximate cause of his injuries.

Defendant also contends that it was the misuse by the plaintiff's employer and his fellow employees that should prevent the plaintiff from recovering as a matter of law. It has been judicially determined that in a strict product liability case a manufacturer can avoid all liability and defeat the plaintiff's action if the evidence establishes that the conduct of another, such as the plaintiff's employer, was the sole proximate cause of the plaintiff's injury. (*Stanfield v. Medalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 641; *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 646; *Santiago v. Package Machinery Co.* (1970), 123 Ill. App. 2d 305, 312.) There is evidence in the record indicating that two of the plaintiff's fellow employees used a brass rod on the day of the accident in an attempt to extricate the hardened plastic material from the feed hole area. Defendant asserts that it was this conduct which proximately caused the plaintiff's injuries. Defendant offered no expert testimony or other evidence to establish that the fellow employees had been warned or directed not to take such actions or any evidence that such action constituted misuse or abusive treatment of the machine which, in turn, caused the machine to malfunction and proximately cause the plaintiff's injuries.

In addition, the conduct of the fellow employees cannot be considered in isolation. Neither the machine nor the operator's manual contained any warning regarding the possible danger of hot plastic erupting from the feed hole. Nor were the employees aware of any admonition that the hopper cover or head should not be removed or that the machine should be turned off if there was a blockage of the feed hole. It cannot be said as a matter of law that the conduct of Precision or the fellow employees of plaintiff constituted such misuse of the product as to be the sole proximate cause of plaintiff's injuries.

■ Given the totality of the facts and circumstances shown by the evidence, we hold that the jury, as reasonable persons, could have concluded that the defendant manufacturer knew or should have known of the danger to maintenance men, including the plaintiff, from exposure

to hot plastic material erupting through the feed hole during maintenance operations to purge the machine of hardened plastic, and that as a result of the failure to warn or instruct concerning said danger the machine in question was unreasonably dangerous and in a defective condition when it left the control of the defendant and that the defective condition was a proximate cause of plaintiff's injuries and damages.

The trial court did not err in denying defendant's motion for judgment *n.o.v.* in its favor.

We further hold that the jury's verdict is not against the manifest weight of the evidence and the trial court did not err in denying the defendant's alternative motion for new trial.

Finally, defendant contends that the trial judge committed reversible error by communicating, via the bailiff, with the jury. While the action of the trial judge in communicating with the jury during the course of its deliberations is generally not approved, a brief communication between the court and the jury which is neither prejudicial to the defendant nor calculated to influence the jury will not warrant reversal. (*People v. Tilley* (1952), 411 Ill. 473, 478, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 641, 73 S. Ct. 23.) Established case law requires that the moving party must demonstrate specific prejudice before a jury verdict will be set aside as a result of an unauthorized communication with the jury. *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 505; *Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 213; *Gale v. Hoekstra* (1978), 59 Ill. App. 3d 400, 408; *Kohler v. Central & Southern Truck Lines* (1977), 45 Ill. App. 3d 621, 626.

Recently, this court determined that no prejudicial error warranting reversal occurred when a trial judge, in response to an unsolicited statement from the jury foreman as to the numerical division of jurors, stated that the jury should continue its deliberations. (*People v. Farella* (1979), 79 Ill. App. 3d 440, 445-46.) This court stated in *Farella* that the judge's response that the jury "continue deliberating" was simple and neutral and could in no way be deemed coercive.

■■ In this case, the trial judge, in responding to an unsolicited request by the jury for either a new verdict form or a new special interrogatory form so that it might correct a mistaken mark, instructed the bailiff to inform the jury that it should scratch out its original misplaced mark and enter its intended answer in the appropriate place on the form. There is no evidence in the record to indicate that either the trial judge or the bailiff suggested to or informed the jury how to answer the special interrogatory or what verdict to enter. In fact, the trial judge's remarks on the record indicate that he did not even know which form the jury had mistakenly marked, the special interrogatory form or the verdict form. Furthermore, the record indicates that the trial judge informed counsel for both parties

in open court of the nature and extent of the oral communication; the forelady confirmed the judge's rendition of the occurrence. Subsequently, the jury was polled with each juror affirming the verdict and answer to the special interrogatory. The oral communication here, like that in *Farella*, was not suggestive or coercive and did not result in injury or prejudice to the defendant. The response of the judges in both situations was neutral and insignificant.

It is apparent that the oral communication here was neither prejudicial to the defendant nor calculated to influence the jury. We conclude that this communication did not violate any constitutional rights of the defendant.

The judgment of the circuit court of Winnebago County in the amount of $75,000 in favor of the plaintiff and against the defendant affirmed.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.