JUDY HOLECEK, Adm'x of the Estate of Jerry Alios Holecek, Deceased, Plaintiff-Appellant, *v.* E-Z JUST, Defendant (Sterling Models, Inc., *et al.*, Defendants-Appellees).

First District (5th Division)   No. 83—1142

Opinion filed May 11, 1984.

Leonard M. Ring & Associates, of Chicago (Judith E. Fors, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Shaun McParland, of counsel), for appellee Sterling Models, Inc.

VanDuzer, Gershon, Jordan & Peterson, of Chicago (Horace W. Jordan, of counsel), for appellee LaGrange Hobby Center, Inc.

Haskell & Perrin, of Chicago (James V. Marcanti, of counsel), for appellee Perfect Parts Company.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin, of counsel), for appellee Sullivan Products, Inc.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Judy Holecek, administratrix of the estate of Jerry Alios Holecek, deceased, appeals from the summary judgments entered in her suit based on strict liability in tort in favor of defendants Sterling Models, Inc. (Sterling), Perfect Parts Co. (Perfect), Sullivan Products, Inc. (Sullivan), and LaGrange Hobby Center, Inc. (Hobby Center).

Deceased was plaintiff's husband. He had purchased a model airplane kit from the Hobby Center. The kit manufactured by Sterling contained only those parts necessary to construct a balsa wood airplane. It did not contain any accessories or parts making the wooden model plane capable of being flown. In order to fly it, decedent purchased also from the Hobby Center, (a) a control wire manufactured by Sullivan, (b) a swivel connector manufactured by Perfect Parts, and (c) a control handle manufactured by E-Z Just and Elwood Phillips d/b/a Phil/Lays and distributed by SIG Manufacturing. E-Z Just and Elwood Phillips were never served. A summary judgment in favor of SIG was not appealed.

Plaintiff's husband assembled the plane and on August 1, 1979, flew it for approximately one hour. On August 2, 1979, he was flying it adjacent to his home on land containing overhead electrical wires carrying 345,000 volts. He had leased this land from Commonwealth Edison Company (not a party to this litigation). While flying the model, it came into contact with the overhead wires—or at least within arcing distance. There was a large boom and a flash. He was severely burned and died August 23, 1979.

Shortly after the occurrence, he told a neighbor that he did not know how the accident happened, "but he thought that the power lines were higher than they apparently were."

Plaintiff's amended complaint against Hobby Center, Sterling, Perfect and Sullivan was grounded in essence on the contention that defendants' products were defective and unreasonably dangerous in that they neither insulated the users from the foreseeable hazards of electricity nor gave sufficient warning of this danger. It alleged that the balsa wood airplane kit sold by Hobby Center and the parts manufactured by each of the other defendants respectively were "in a defective condition, unreasonably dangerous to users or consumers, in that they exposed users or consumers to the foreseeable and anticipated danger of electrocution from contact with high voltage electrical lines."

With reference to Sterling, the manufacturer of the kit, and Hobby Center from whom it was purchased, the amended complaint alleged that the kit and the control handle were unreasonably dangerous in one or more of the following ways:

(a) The model airplane kit was not supplied with a nonconducting control line;

(b) The model airplane kit was not supplied with a handle capable of insulating the user from high voltage which the model airplane may encounter in flight;

(c) The model airplane kit was not supplied with sufficient warnings about the danger of using electrically conducting control lines and noninsulating control line handles.

(d) The model airplane control line handle was defectively designed and manufactured in that it allowed the hand of the user to contact the metal control line.

The trial court granted defendants' motions for summary judgment,

"based on the lack of any duty to warn of the dangers of electricity as so ruled in *Genaust v. Illinois Power Co.*, and further upon the lack of any defective and unreasonably dangerous conditions of any of aforesaid defendants' products as alleged by the plaintiff, and not based upon the doctrines of assumption of the risk of misuse; \*\*\*."

Plaintiff contends that the trial court in so holding was in error. We disagree.

A failure to warn of a product's dangerous propensities can be characterized as the defective condition which causes injury and may serve as the basis for holding a manufacturer or seller strictly liable in tort. *Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 404 N.E.2d 1013; *Woodill v. Parke Davis Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194. See also *Lawson v. G.D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, a galvanized steel citizen's band antenna and tower which plaintiff was installing came in close proximity to overhead, uninsulated power wires located close to the boundary of plaintiff's property. Electric current arced from the overhead power lines through the antenna severely injuring plaintiff. Thereafter, plaintiff filed a strict liability action against the manufacturer of the antenna alleging that the antenna was in an unreasonably dangerous condition since it did not have adequate warnings or labels informing plaintiff of the dangers of using, installing, or bringing the antenna in close proximity to overhead power wires.

The supreme court affirmed the dismissal of the strict liability count for failure to state a cause of action, saying (62 Ill. 2d 456, 465-66):

"Plaintiff's basis for maintaining that counts III, IV and V state a cause of action under strict liability is predicated on the theory that the tower and the antenna were products which were unreasonably dangerous because they failed to have adequate warnings or labels attached informing users of the dan-

ger of electrical arcing if either of the products were brought in close proximity to power wires. He contends that the failure to warn of the possible danger is sufficient to constitute an unreasonably dangerous condition without the need to allege a specific defect in the design or construction of the product. While there is no dispute that contacting electrical wires poses a known danger, plaintiff maintains that it is not common knowledge that electricity can arc if a metal object is brought into close proximity with an uninsulated electrical transmission wire. He suggests this type of wire is used extensively in modern urban areas where many outside antennas are installed at heights equaling or exceeding the height of such wires thereby giving rise to a duty to warn of the danger of electrical arcing.

The determination of whether a duty to warn exists is a question of law and not of fact. (See *Fanning v. LeMay* (1967), 38 Ill. 2d 209; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541.) Underlying such a determination is necessarily the question of foreseeability (see 72 C.J.S. *Products Liability*, sec. 26 (1975 Supp.)), which, in the context of determining the existence of a duty, is for the court to resolve. 'A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. "In a sense, in retrospect almost nothing is entirely unforeseeable." [Citation.] Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur.' (Emphasis in original.) *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13.

Reviewing the facts alleged in the complaint, we do not find it was objectively reasonable for Hy-Gain, Rohn and Lurtz to expect a user of their products to be injured in the manner in which plaintiff was injured. As plaintiff admits, the danger of electricity is common knowledge. Moreover, it is common knowledge that metal will conduct electricity. Accordingly, it is not objectively reasonable to expect that a person knowing the danger of electricity if metal should contact electrical wires, would attempt to install a metal tower and antenna in such close proximity to electrical wires. The fact that plaintiff's injury was the result of electricity arcing to the tower or the antenna rather than from actual contact with the wires is not controlling. The controlling fact is that it was not reasonably foreseeable a user would install the products in such proximity to electrical wires when the harsh consequences of the slightest mishap, which would cause the metal to contact the wires, are

so obvious."

and at page 467:

"Although comment *j* to section 402A of the Restatement (Second) of Torts recognizes that a failure to warn can make a product unreasonably dangerous, we conclude that a duty to warn is not required where the product is not defectively designed or manufactured, and where the possibility of injury results from a common propensity of the product which is open and obvious. Since the facts alleged in counts III, IV and V demonstrate on their face that plaintiff would never be entitled to recover under strict liability, these counts were properly dismissed. *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 545."

Plaintiff seeks to avoid the clear language of *Genaust* by asserting that it "should be grouped with those Illinois cases finding no duty to warn members of a trade or profession well-acquainted with a particular hazard." This contention was explicitly rejected in *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 442 N.E.2d 338. In that case the court affirmed the granting of summary judgment for a defendant who manufactured a forklift. Plaintiff's decedent in *Miscevich* had been killed when a forklift which had been used to raise a light pole came into contact with an electric power line. This caused a current of electricity to pass through the lift and to strike plaintiff's decedent. The trial court, relying on *Genaust*, granted summary judgment in favor of the manufacturer of the forklift and against plaintiff's decedent. On appeal, plaintiff urged reversal on the ground that in *Genaust* plaintiff was an electrical contractor while in *Miscevich* plaintiff's decedent was a 19-year-old nonelectrician.

The court said:

"We do not believe *Genaust* can be read as narrowly as plaintiff contends. * * *

Plaintiff has not cited any case which under similar facts limits the *Genaust* holding to plaintiffs who are knowledgable in electrical work. We conclude that the danger of electrical energy present under the facts is a matter of common knowledge to all persons of ordinary intelligence and experience and, as such, to the decedent. Thus, *Genaust* is controlling, and a duty to warn is not required under these facts." *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 404, 442 N.E.2d 338.

Plaintiff's decedent in the case at bar was a 40-year old man with experience in welding. He was of "ordinary intelligence and experi-

ence" to whom the danger of electrical energy present under the facts here was a matter of common knowledge for him. Where readily apparent and well-known dangers are involved, it is not foreseeable that a person could bring an object which conducts electricity into contact with or in close proximity to exposed electric wires.

On the record before us, the trial court correctly held that, as a matter of law, there was no duty on defendants to warn of the dangers of electricity and that there was a lack of any defective and unreasonably dangerous conditions of any of defendants' products. Its holding, which we affirm, is not to be construed as establishing that the maker or seller of any product has no duty to warn any user of any electrical hazard at any time. Each case will depend on its own facts.

We note that the lease of the land upon which plaintiff's decedent was standing when the accident occurred provided:

> "THIRTEENTH: Due to the presence of Licensor's electrical facilities located on the licensed premises, Licensee shall not allow any vehicles or equipment having a height in excess of 15 feet from the original ground grade level to be parked, used, driven or stored on the licensed premises. *Licensee shall prohibit any activities such as flying kite or model airplanes* or the transportation or movement of anything having a height in excess of 15 feet from original ground grade level on the licensed premises. In the event any crop on the licensed premises exceeds a maximum height of 15 feet, Licensee shall remove said crop at his sole cost and expense." (Emphasis added.)

The summary judgments are affirmed.

MEJDA, P.J., and WILSON, J.,* concur.

---

*This opinion was adopted as the opinion of the court prior to the death of Mr. Justice Wilson.