JOHN CARROLL, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 85—3545

Opinion filed September 22, 1986.

John W. Cooley, of Evanston, for appellant.

John F. Fitzgerald and Robert M. Smith, both of Smith, Tamillow & Fitzgerald, of Chicago, for appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, John Carroll, appeals from the orders of the circuit court of Cook County granting summary judgment in favor of the defendants, Babson Farms, Inc., and Lester's of Minnesota, Inc.

On August 27, 1981, John Carroll was hired by Babson Farms, Inc. (Babson Farms), to install lightning rods on a newly constructed shed at a farm owned by Babson Farms located near the intersection of Teman Road and Miller Road in DeKalb County, Illinois. During the

course of his attempt to install the lightning rods, Mr. Carroll was electrocuted by an active overhead power line containing high voltages of electricity. As a result of the accident, Mr. Carroll sustained severe injuries.

In October 1981 Mr. Carroll brought suit against Babson Farms, the owner of the shed, Lester's of Minnesota, Inc. (Lester's), the builder of the shed, and Commonwealth Edison Company (Commonwealth Edison), the installer, inspector and maintainer of the power lines. In count I of his complaint, Mr. Carroll alleged that Babson Farms was negligent and careless in erecting the shed in dangerous proximity to electric power lines, and in failing to warn the plaintiff of the dangerous condition. In count II, Mr. Carroll alleged that Lester's negligently and carelessly planned the construction of the shed without regard to the electrical wires, constructed the shed in close proximity to the wires, and failed to warn the plaintiff of the dangerous condition thereby created. In count III, Mr. Carroll charged Commonwealth Edison with various negligent and careless conduct including installing wires without proper inspection, failure to make periodic inspections, and failure to warn the plaintiff of a dangerous condition.

Commonwealth Edison filed an answer denying the allegations in count III of the complaint on January 4, 1982. On February 1, 1982, Mr. Carroll sought and was granted leave to file an amended count I of his complaint, alleging additional negligent and careless conduct against Babson Farms. Thereafter, Babson Farms moved to strike and dismiss count I, and on August 19, 1982, this motion was granted.

Subsequently, Mr. Carroll filed a second amended complaint against Babson Farms, Lester's, and Commonwealth Edison on May 4, 1983. Again, Babson Farms filed a motion to strike and dismiss count I of the now second amended complaint, and Commonwealth Edison again filed its answer. Babson Farms also moved for summary judgment, attaching the deposition of the plaintiff, John Carroll, and photographs of the scene of the occurrence. This motion was denied on July 2, 1984, but in April 1985 Babson Farms filed a motion for reconsideration, and on November 15, 1985, following a hearing, the trial court granted the motion, and, subsequently, summary judgment was then entered in favor of Babson Farms on count I of the plaintiff's second amended complaint.

Lester's also moved for summary judgment based on count II of the plaintiff's second amended complaint, and on March 22, 1985, the motion was granted. Attached to Lester's motion for summary judg-

ment was the deposition testimony of Mr. Larry Lembrich, the territory manager for Lester's.

Thereafter, Mr. Carroll filed a motion to vacate the trial court's order granting summary judgment in favor of Lester's. Attached to the motion was the deposition testimony of Mr. Robert Hohmann, manager of Babson Farms. The trial court denied Mr. Carroll's motion on September 20, 1985. Mr. Carroll's claim against Commonwealth Edison was also settled, and count III of the second amended complaint was dismissed on September 18, 1985.

As stated previously, the motions for summary judgment filed by Babson Farms and Lester's included several depositions and photographs which were attached as exhibits pursuant to Supreme Court Rule 191(a) (87 Ill. 2d R. 191(a)). The deposition testimony revealed that, at the time of the accident, Mr. Carroll had been self-employed as a lightning-rod installer for approximately four years. He stated that he drove around in his pickup truck looking for buildings that needed lightning rods, and upon finding such a building, he would solicit the owner of that building for work. Mr. Carroll testified that when he installed the lightning rods on the shed located on Babson Farms, the wires were not hidden or concealed from view. He also stated that he was aware that power lines carried electric current, and that such a fact was a matter of common knowledge. During his deposition, Mr. Carroll examined a photograph of the shed and identified the power line that he saw while he was working on the roof.

Mr. Larry Lembrich testified that he had met with Mr. Robert Hohmann in early May 1982 at the site where the shed was to be erected. According to Mr. Lembrich, he and Mr. Hohmann "staked out" the building site and Mr. Hohmann was "quite specific" as to where the shed was to be built, the height of the shed, the length of the shed, and the direction in which the shed was to face. Following the "stake out," Mr. Lembrich drew the building to scale on engineering blueprint paper and sent the scale drawings to Mr. Hohmann. According to Mr. Lembrich, Mr. Hohmann did not ask Mr. Lembrich to alter the drawings. Mr. Hohmann's deposition testimony, which was attached to the plaintiff's motion to vacate the trial court's order granting summary judgment in favor of Lester's, was essentially the same as that put forth by Mr. Lembrich.

■ The plaintiff's primary argument on appeal is that the trial court erred in granting summary judgment in favor of Babson Farms. We disagree.

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, the Illinois Supreme Court held that the danger of electrocution

by touching or arcing electrical wires is common knowledge to all persons of ordinary intelligence and experience, and, accordingly, there is no duty to warn an invitee on one's property that such a danger exists. In *Genaust*, during the installation of a galvanized-steel tower and antenna on the landowner's property, the plaintiff was electrocuted when the antenna came in close proximity to uninsulated power lines. Following the accident, the plaintiff brought suit against the landowner and the utility company. On appeal, the supreme court affirmed the trial court's dismissal of the plaintiff's suit against both defendants stating:

> "[W]e note that count VI fails to allege that the wires in question were either hidden or concealed. As it is common knowledge that electricity is dangerous, so is it also common knowledge that any line or wire carrying electricity is dangerous. The potential risk of installing metal equipment in close proximity to power wires is apparent. A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." 62 Ill. 2d 456, 469, 343 N.E.2d 465.

In urging this court to reverse the trial court's ruling granting summary judgment in favor of Babson Farms, the plaintiff argues that the trial court erred in holding that *Genaust* is controlling. It is the plaintiff's contention that *Genaust* is factually distinguishable, since the plaintiff in *Genaust* was an electrical contractor, and thus, could reasonably be expected to fully recognize and appreciate the danger of possible electrical arcing between the power line and the metal pole. On the other hand, the plaintiff argues that since he was not an electrical contractor such a danger was not common knowledge to him, and thus there was a duty to warn him of the dangers of electricity under the facts alleged here.

We find no merit in the plaintiff's attempt to distinguish his case from *Genaust*, for the simple reason that, as observed by this court in *Holecek v. E-Z Just* (1984), 124 Ill. App. 3d 251, 255, 464 N.E.2d 696, the plaintiff's degree of experience or expertise as an electrician is not determinative. In *Holecek*, the plaintiff was a welder who, like the plaintiff here, sought to distinguish *Genaust* on the ground that the plaintiff in *Genaust* was an experienced electrical contractor. We rejected the plaintiff's argument in *Holecek*, and quoting with approval the court's decision in *Misevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 404, 442 N.E.2d 338, this court held:

> " 'Plaintiff has not cited any case which under similar facts lim-

its the *Genaust* holding to plaintiffs who are knowledgeable in electrical work. We conclude that the danger of electrical energy present under the facts is a matter of common knowledge to all persons of ordinary intelligence and experience and, as such, to the decedent. Thus, *Genaust* is controlling, and a duty to warn is not required under these facts.' " (*Holecek v. E-Z Just* (1984), 124 Ill. App. 3d 251, 255, 464 N.E.2d 696.) We affirm our earlier decision in *Holecek*, and find that *Genaust* is not limited to plaintiffs who are knowledgeable in electrical work, but clearly applies to all persons of "ordinary intelligence and experience." Thus, the plaintiff's argument that a duty to warn was created here because he was not an electrical contractor is without foundation.

■ The plaintiff further attempts to distinguish *Genaust* asserting that (1) unlike the factual situation presented in *Genaust*, the power lines here were actually located on the property of Babson Farms and, therefore, under its control; and (2) a question of fact exists as to the obviousness of the power lines. We find no merit in either of these arguments. The plaintiff's asserted distinction that the power lines were located on Babson Farms is of no significance, since the basis for the holding in *Genaust* was that the danger of electricity is common knowledge, and not that the wires were beyond the landowner's control because they were not located on the landowner's property. We also find no merit in the plaintiff's allegation that a question of fact existed regarding the "obviousness" of the power lines. Although Mr. Carroll did assert in his amended complaint that the power lines were hidden from view, Mr. Carroll's deposition testimony, as well as the photographs of the shed, clearly reveal the contrary. A party opposing a motion for summary judgment cannot rely upon his complaint or answer to raise genuine issues of material fact, but must present such issues through evidentiary facts by means of affidavits, depositions, or similar evidence, and, if they do not, summary judgment is appropriate. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497; see also *Central Clearing, Inc. v. Omega Industries, Inc.* (1976), 42 Ill. App. 3d 1025, 356 N.E.2d 852.

Here, Mr. Carroll testified that he saw a wire on the roof and that he realized the wire had the capacity to shock him. The photographs submitted in support of the motion for summary judgment filed by Babson Farms also reveal that the power lines were clear and visible and not hidden. Thus, the evidence established the power lines were

not hidden from view.

■ However, the plaintiff argues that the trial court erred by failing to consider the applicability of section 343A of the Restatement (Second) of Torts, which limits a landowner's immunity from liability for injuries occurring as a result of an obvious condition on his premises. Section 343A provides:

"Known or Obvious Dangers. (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Restatement (Second) of Torts, section 343A (1965).)

Comment F of the Reporter's notes to section 343A, upon which the plaintiff here specifically relies, states that a possessor of land may be under a duty of care to an invitee who knows of the danger on the possessor's premises if the possessor has reason to expect that (1) "the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it"; or (2) "the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts, section 343A, comment F, at 220 (1965).

We find no merit in the plaintiff's argument that section 343A is applicable here. No distraction of the plaintiff is factually indicated by the evidence which could have caused the plaintiff to forget or fail to realize the danger of working in any way near the power lines, and, as stated previously, the power lines were in clear view, and, in fact, were observed by the plaintiff. Furthermore, we note that the plaintiff does not contend that subsection (2) of comment F of section 343A is applicable here, nor do we see how it could be applicable under the facts of this case.

In support of his argument that subsection (1) of comment F of section 343A is somehow applicable here the plaintiff has cited *Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 365 N.E.2d 446. In *Armagast*, this court considered whether a plaintiff's fall into an open trap door in the defendant's kitchen was contributory negligence as a matter of law. We find that *Armagast* is inapposite to the present case because we are not concerned here with whether the plaintiff was negligent, but, rather, whether the defendant had a duty to warn of the dangers of electrical power lines.

We conclude that *Genaust* is controlling, and because the danger

of electrical energy presented under the facts was a matter of common knowledge to all persons of "ordinary intelligence and experience," there existed no duty on the part of Babson Farms to warn the plaintiff of a condition which was or should have been known and obvious to him.

The plaintiff also argues that the trial court erred in granting summary judgment in favor of Lester's. Specifically, Mr. Carroll contends that his injury was a foreseeable consequence of Lester's construction of the shed in close proximity to the electrical wires. The plaintiff argues that it was reasonably foreseeable that someone working on the roof of the shed for the first time might not have seen the electrical wires or might not have appreciated the danger of the close proximity of the wires. Therefore, the plaintiff asserts that Lester's had a duty to install a sign on the building warning of the danger of the wires. Once again, we find no merit in the plaintiff's argument.

As we have said, under the supreme court decision in *Genaust*, electricity is an open and obvious danger, and in fact, as indicated by the plaintiff's deposition testimony, as we have previously noted, he saw the wire above the shed and recognized the danger involved. Further, the evidence shows here that Lester's merely followed the plans and specifications developed by Babson Farms in constructing the shed. As the supreme court said in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 209, 384 N.E.2d 368:

> "An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them. [Citations.]"

The plaintiff, however, argues that Lester's was negligent in carrying out the specifications provided by Babson Farms, and has cited *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 417 N.E.2d 154, in support of his argument. In *Lundy*, the builder there was found negligent for following defective specifications provided by the plaintiff's employer. Here, the plaintiff failed to show that the specifications provided by Babson Farms were clearly or apparently defective, or that anything in the specifications indicated an imminently dangerous condition of which Lester's should have been aware. Thus, there is no basis for holding Lester's liable for merely complying with the specifications provided by Babson Farms.

In addition, the plaintiff has failed to show that Lester's did not

carefully carry out the specifications. There is no evidence that Lester's acted negligently in any manner. It is clear from Mr. Lembrich's testimony that Lester's had little, if any, input into the location where the shed was to be built, and merely drew the blueprints in accordance with Mr. Hohmann's specifications. Finally, there is also no allegation that Lester's deviated from the specifications in erecting the shed. Thus, under the circumstances presented here, Lester's had no duty to warn of the overhead power lines.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.