VERA OBERG, Indiv. and as Special Adm'r of the Estate of Frederick W. Oberg, Deceased, Plaintiff-Appellant, v. ADVANCE TRANSFORMER COMPANY, INC., Defendant-Appellee.

First District (6th Division)   No. 1—89—2836

Opinion filed February 15, 1991.

Coleman & O'Halloran, Ltd., of Chicago (John M. O'Halloran, of counsel), for appellant.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff, as administrator of the estate of her deceased husband, brought an action sounding in strict liability in tort against several defendants, including defendant-appellee Advance Transformer Company, Inc. Plaintiff alleged that the ballast which plaintiff's decedent was installing at the time of his death was an unreasonably dangerous product due to insufficient warnings and instructions. The ballast was manufactured by defendant. The trial court granted defendant's motion for summary judgment, holding that there was no duty to warn plaintiff's decedent of the obvious electrical danger in this case. The trial court's order is appealable pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), and the case remains pending as to the other defendants. Plaintiff appeals, alleging that there existed genuine issues of material fact which precluded the entry of summary judgment.

The evidence before the trial court revealed that the decedent, Frederick Oberg, was employed by Tech Plastics, Inc., as the supervisor of the employer's finishing paintings department at the time of the occurrence. At the time of the occurrence, the decedent was at work and in the process of installing a ballast into a fluorescent light fixture.

Ballasts for fluorescent light fixtures can either increase or decrease the electrical voltage to the fixture. Fred Abrahms, defendant's manager of product service engineering, testified that a fluorescent lamp has no resistance, so that if power were applied to the lamp without a current limiting device, the lamp would burn out. Thus, one of the functions of a ballast is to limit the current to the lamp. Additionally, the ballast serves to increase the voltage which is necessary for starting the lamp. The majority of ballasts increase the voltage.

The ballast in question increased the electrical charge to 525 volts, from the 277-volt level of the conduit which is the standard level of voltage in an industrial building. The wires which bring power to the ballast were properly connected and the ballast was designated: "Output Voltage 525 volts." The red wires which carried the current from the ballast were not connected to the fixture, and there was no extraneous voltage coming from the ballast itself. Therefore, the only source of the electrical shock decedent allegedly received was from the increased voltage which travelled through the red wires of the ballast. Plaintiff does not allege that the shock itself caused the death of her decedent, but rather that the shock caused her decedent to fall from the ladder (some 20 feet) and that the fall caused the decedent's death.

Defendant placed the ballast in the stream of commerce without installation instructions or warnings, including warning of the danger of increased voltage. Fred Abrahms stated that he expected licensed electricians or electrical maintenance personnel to install these ballasts. Sometime after this incident, instructions and warnings were added to similar ballasts which defendant manufactured. Abrahms testified that the normal procedure in replacing a ballast is to assemble the ballast in the fixture, close up the fixture, put the lamps in and turn on the power switch to see if there was light. While he would not expect someone to use a voltage meter to measure the energizing of the wires unless he or she were a highly trained contractor, the installer of a ballast would be expected to have the power source off when installing a ballast. Abrahms was not aware of any installers who did not turn off the power when they are installing ballasts, and in his 30 years of experience with defendant, he was unaware of anyone else

that had been injured when installing a ballast. Fred Hoppe, a journeyman electrician, said that it was not proper procedure to replace a ballast with the power on, although he has done so when he felt it was safe to install a ballast with the power on.

Plaintiff testified that her husband had an understanding of electricity and electrical equipment. He had engaged in electrical wiring for a prior employer. He had been taught how to run a wire through a light fixture and how to install an outlet. He was comfortable in dealing with electricity around the house and had previously worked on fluorescent lights. He did the wiring for fluorescent light fixtures at home. Before installing such a fixture, he turned the power off. In fact, plaintiff's decedent turned the power off before working on anything electrical. Plaintiff's decedent never called an outside electrician, but did the electrical work himself. The circuit court found that defendant had no duty to warn of electrical danger, holding "it is obvious to anyone who works on an electrical fixture."

The issue which needs to be resolved is whether the trial court correctly determined as a matter of law that defendant had no duty to warn plaintiff's decedent of the danger of the increased voltage, or that plaintiff's decedent should only perform the work with the power off.

■■ ■ Summary judgment should be granted only when the pleadings, depositions and admissions, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); see *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) The question of whether a duty exists is an issue of law to be determined by the court. *Bonder v. Commonwealth Edison Co.* (1988), 168 Ill. App. 3d 80, 82, 522 N.E.2d 227.

■■ A failure to warn of a product's dangerous propensities can be characterized as a defective condition which causes injury and may serve as the basis for holding a manufacturer or seller strictly liable in tort. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) A manufacturer must give both adequate directions for use and adequate warnings against potential dangers in the use of its product. (*McCormick v. Bucyrus-Erie Co.* (1980), 81 Ill. App. 3d 154, 162, 400 N.E.2d 1009.) A duty to warn is also imposed "where there is unequal knowledge, actual or constructive, and the defendant possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 638, 388 N.E.2d 964.

It is plaintiff's position that defendant had a duty to warn her decedent that the ballast had a dangerous propensity to increase voltage, which caused shock to her decedent, causing him to fall off the ladder. The principles articulated by the court in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, control this case. In *Genaust*, the plaintiff brought an action for injuries which he sustained when power from nearby lines arced to an antenna which he was installing. The plaintiff alleged that the landowner negligently failed to warn of the danger of the uninsulated condition of the power lines, ordered construction of the antenna too close to the power lines and generally failed to provide the plaintiff a safe place to work. The court declined to impose a duty on the landowner, observing that the dangerous nature of electricity was common knowledge, as was the fact that any wire carrying electricity was dangerous. The court concluded that an invitee "must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." (*Genaust*, 62 Ill. 2d at 469.) The *Genaust* court also observed that in a strict liability case, "a duty to warn is not required where the product is not defectively designed or manufactured, and where the possibility of injury results from a common propensity of the product which is open and obvious." *Genaust*, 62 Ill. 2d at 467.

The rationale of *Genaust* has been followed in quite a number of cases where the courts have denied recovery against defendants where plaintiffs alleged that there was a duty to warn of electrical danger. See *Fliszar v. Commonwealth Edison Co.* (1988), 173 Ill. App. 3d 770, 527 N.E.2d 1016; *Bonder v. Commonwealth Edison Co.* (1988), 168 Ill. App. 3d 80, 522 N.E.2d 227; *Icenogle v. Myers* (1988), 167 Ill. App. 3d 239, 521 N.E.2d 163; *In re Estate of Dickens* (1987), 161 Ill. App. 3d 565, 515 N.E.2d 208; *Carroll v. Commonwealth Edison Co.* (1986), 147 Ill. App. 3d 909, 498 N.E.2d 645; *Holecek v. E-Z Just* (1984), 124 Ill. App. 3d 251, 464 N.E.2d 696.

In *Holecek*, while the court observed that whether there is a duty to warn of the danger of electrical hazard will depend on the facts of the case (124 Ill. App. 3d at 256), the court affirmed summary judgment for the defendant-manufacturer of a product (a flying model airplane) which came into contact with power lines. The court observed that the plaintiff, a 40-year-old man with experience in welding was "of 'ordinary intelligence and experience' to whom the danger of electrical energy present under the facts here was a matter of common knowledge for him." (*Holecek*, 124 Ill. App. 3d at 255-56.) In *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 404, 442 N.E.2d 338, the court held that the *Genaust* rationale was not ap-

plicable only to "plaintiffs who are knowledgeable in electrical work." In *Peterson v. B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 366 N.E.2d 144, the court was faced with a claim by an electrician against the manufacturer of a relay switch where the plaintiff, an electrician, was injured when he touched an insufficiently insulated wire which was near the switch. In affirming summary judgment, the court observed:

> "In the instant case the plaintiff is an experienced electrician who is well aware of the danger of electricity. He stated in his deposition that he had had a hot glove with him which he planned to use in shutting off the circuit breaker. He planned to use the glove as a safety precaution. *** [T]he trial court *** was justified in finding that the injuries to plaintiff were not reasonably foreseeable by the manufacturer." *Peterson*, 50 Ill. App. 3d at 1032.

■ A review of the case law on the issue leads to the conclusion that the trial court was correct in granting defendant's motion for summary judgment. Plaintiff makes the argument that as Hoppe, the electrician who inspected the ballast, was unable to ascertain that the voltage was increased by the ballast, the "dangerous propensity" of the increasing of the voltage could not be discovered by even an expert in the field of electricity. Relatedly, plaintiff makes the argument that Hoppe himself often installed ballasts with the power on, and Hoppe in fact installed the subject ballast with the power on. Thus, according to plaintiff's second argument, traditional factors which are to be analyzed in determining whether a duty should be imposed, such as the "foreseeable" nature of the occurrence, the magnitude of the risk, and the minimal burden on the defendant, point in this case to the imposition of a duty to warn and instruct.

■ Plaintiff has not cited to the record in presenting any of the "facts" upon which he bases these arguments. In fact, a review of the record reveals no testimony on the part of Hoppe to the effect that Hoppe was unable to determine that the subject ballast increased the voltage. As indicated, the fact that the voltage output would be increased to 525 volts was designated on the ballast itself. Moreover, plaintiff's arguments with respect to Hoppe's commonly installing ballasts with the power on are based upon an inaccurate characterization of Hoppe's testimony. Hoppe clearly testified that it was not proper procedure to install ballasts with the power on, and that he only did so when it was "safe" to do. When Hoppe installed the subject ballast, he used a voltage meter and a hot glove (which provided him in-

sulation if he should come into contact with the wires). Both of these arguments, therefore, lose their force.

■■ Plaintiff also argues that two fact questions precluded the entry of summary judgment. The first question, plaintiff contends, is whether plaintiff's decedent's installing the ballast in the manner in which he did was "foreseeable." This contention is resolved, however, by the testimony of Hoppe that the ballast should not have been installed in the manner in which the decedent did. The second alleged factual question is whether the decedent had knowledge of the danger. This question, however, is resolved by the extensive electrical experience that the decedent had and because the increased voltage output was designated on the ballast. Moreover, assuming that fact questions remain, plaintiff's position must fail because "a duty to warn is not required where the product is not defectively designed or manufactured, and where the possibility of injury results from a common propensity of the product which is open and obvious." (*Genaust*, 62 Ill. 2d at 467.) Further, the decedent would have received a shock regardless of whether the ballast increased the voltage.

In sum, it is clear that the very purpose of a ballast is to change the voltage running to the fixture. Hoppe, the journeyman electrician whose testimony plaintiff relies upon, said that it was improper to perform the work the decedent performed while the power was on. Like the court in *Miscevich* (110 Ill. App. 3d at 404), we conclude that "the danger of electrical energy present under the facts is a matter of common knowledge" to the decedent. The decedent's injury was caused only by the common propensity of the product, which, as a matter of law, is open and obvious. Analogously, the court observed in *Hubbard v. Chicago Housing Authority* (1985), 138 Ill. App. 3d 1013, 1018, 487 N.E.2d 20, when faced with an action involving a burn injury from hot steam, "[w]e do not believe that hot steam pipes are defective merely because they are hot. Being hot is a common propensity and inherent property of steam pipes and is to be reasonably expected in light of their nature and intended function." Not only was the danger to plaintiff's decedent open and obvious as a matter of law, but the danger became more obvious in light of the fact that the product designated that the voltage output would increase to 525 volts. Given the obvious nature of the danger, plaintiff's argument that the duty to warn should be imposed because of unequal knowledge must fail.

■■ It is clear as well that plaintiff's contention that the ballast was defective due to a lack of instructions is only duplicative of the duty to warn issue. Plaintiff does not argue that her decedent did not

know how to install the ballast or that the ballast did not function properly for the lack of instructions. Rather, plaintiff's theory as to inadequate instructions is only that instructions should have told her decedent not to install the device with the power on. This issue is subsumed in our resolution that defendant had no duty to warn of the open and obvious danger.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and EGAN, JJ., concur.