**LOUISVILLE CEMENT CO., Appellant (Defendant Below),**

v.

**Noah MUMAW, Appellee (Plaintiff Below).**

**No. 4–482A103.**

Court of Appeals of Indiana, Fourth District.

May 24, 1983.

Rehearing Denied July 8, 1983.

Thomas W. Fox, Fox & Smith, Jeffersonville, for appellant.

Lewis A. Endres, Young, Lind & Endres, New Albany, for appellee.

CONOVER, Judge.

Louisville Cement Co. (Louisville), defendant-appellant, appeals a $421,000 judgment rendered in favor of Noah Mumaw, plaintiff-appellee, in Clark Superior Court.

Reversed.

ISSUES

1. Whether there was sufficient evidence to support the jury's verdict?

2. Whether the trial court erred in refusing to judicially notice the Federal Occupational Safety and Health Act, and regulations promulgated thereunder?

3. Whether the trial court erred by refusing to give Louisville's tendered jury instructions 1, 2 and 3?

4. Whether the trial court erred by refusing to admit into evidence Mumaw's written waiver of liability?

5. Whether the trial court erred by admitting into evidence the indemnification agreement between Louisville and its demolition contractor?

6. Was the verdict of the jury excessive?

FACTS

Louisville has owned a cement plant in Speed, Indiana, for many years. In 1980, it contracted with U.S. Dismantling and Equipment Corporation (Dismantling) to perform certain demolition work at its Speed plant. By the terms of the contract, Dismantling was to do the actual demolition work, but Louisville was to prepare the area before the work began. Dismantling was to be paid for its work with money and by becoming owner of all equipment within the demolition area. Title to such equipment passed at the time the contract was executed.

Mumaw was hired by Dismantling to assist with the demolition. He was instructed in the use of an oxygen-propane cutting torch and ordered to cut a pipe that had formerly carried No. 2 fuel oil.

The pipes were three inch supply pipelines suspended by hangers from the ceiling at wide intervals. They ran from storage tanks outside the plant to drying kilns inside it. In preparation for the demolition work, Louisville drained the fuel oil from the pipes and disconnected and vented them by permanently permitting air to circulate through the pipes.

Mr. Coleman, Dismantling's job site superintendent, was told by Louisville's Chief Engineer these fuel lines had carried diesel fuel. Coleman was also informed the lines had been drained, disconnected from the pumps and vented at least eighteen months prior to the start of Dismantling's demolition work.

Coleman instructed Mumaw when cutting pipes to cut them "down and away" from him, that is, to cut the pipes from the bottom so that "if there was any material there, it would come out the bottom" and Mumaw would be safe. Mumaw testified he would not have cut the pipe if he had thought there was anything in the pipe he cut. He had been told, however, there was a possibility something was in the pipe he was to cut.

Mumaw stood on a ladder while he cut the pipe. As he cut through the first of the oil lines, its weight caused the cut end of the pipe to sag down, permitting a residue of oil to flow to the cut end. It ignited. Mumaw was engulfed in flames and fell from his perch to the plant floor. He broke his arm and sustained second degree burns over approximately forty percent of his body.

1221

## DISCUSSION AND DECISION

### I.

Mumaw tried his case on two theories of negligence:

(a) Louisville had a duty to warn him of latent defects in its premises and failed to do so, and

(b) Louisville supplied a chattel it knew to be dangerous to a third person without informing him of its dangerous condition. Louisville argues the evidence was insufficient to support either theory. We agree, and thus limit our discussion to Louisville's first issue.

The applicable standard of review for sufficiency questions is well known. We will neither weigh the evidence nor judge the credibility of witnesses. We address only the evidence, along with the logical inferences that support the judgment. If there is substantial evidence on each and every element of the claim we will affirm the judgment. *Riverside Insurance Co. v. Pedigo*, (1982) Ind.App., 430 N.E.2d 796, 803; *Royer v. Pryor*, (1981) Ind.App., 427 N.E.2d 1112, 1115. Where the verdict is a general one, we will not disturb it if the evidence supports any theory of liability. Only where the evidence and inferences lead to a result contrary to the verdict will we reverse. *English Coal Co., Inc. v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302, 311.

a. Dismantling is an independent contractor and Mumaw was in its employ at the time he was injured. Louisville contends the evidence showed Dismantling had assumed the duty of management of the premises during the demolition and salvage operations, relieving Louisville of any duty as the owner of the premises. Implicit in that argument is the notion Louisville discharged its duties as the owner of land to its business invitee, Dismantling.

█ Neither party questions the relationship between Louisville and Dismantling. Dismantling was the business invitee of Louisville. Thus, Louisville owed Dismantling, its invitee, a higher duty of care than Louisville would owe a mere licensee.

*Blake v. Dunn Farms, Inc.*, (1981) Ind., 413 N.E.2d 560; *Great Atlantic & Pacific Tea Co., Inc. v. Wilson*, (1980) Ind.App., 408 N.E.2d 144. It is also unquestioned the employees of an independent contractor are invitees. *Downham v. Wagner*, (1980) Ind. App., 408 N.E.2d 606.

The First District of this court has succinctly enumerated the duty of a landowner owing to invitees upon its premises regarding latent or concealed defects in the following language:

Little discussion or citation of authority is necessary to demonstrate that the owner and occupier of property owes an invitee the duty of keeping ... the property in reasonably safe condition. That duty includes warning an invitee of latent or concealed perils such as are not known to the person injured. The status of the invitee is created by his entering the premises with the occupant's express or implied invitation to transact business or to perform some act which is to the commercial advantage of the occupant. *Mullins v. Easton*, (1978) Ind.App. [176 Ind. App. 590], 376 N.E.2d 1178. A contractor and his employees are invitees, *Rink v. Lowery*, (1906) 38 Ind.App. 132, 77 N.E. 967; ....

*Downham*, 408 N.E.2d at 610.

█ Assuming without deciding a residue of fuel oil in a pipeline which has been drained and vented is a latent defect, we must next decide what the owner's duty was in this regard. The owner or occupant of premises who discovers the existence of a latent or concealed defect in the property which is not likely to be discovered by an invitee may at his option, either correct the condition, or warn the invitee of the latent defect's existence. The owner discharges his duty to the invitee if he follows either course. *Downham, supra;* 62 Am.Jur.2d Premises Liability § 66 (1972). Louisville did warn Dismantling of the condition of the pipeline, its prior use as a diesel fuel conduit, and of the corrective safety measures it had taken. Louisville discharged its duty to its invitees by warning of the existence of the latent defect.

1222

Mumaw's only remaining theory of recovery is Louisville was negligent in failing to adequately warn him or, in the alternative, repair the latent defect, a duty Louisville could not delegate.

When an owner lets a contract to another to perform particular work, retaining no control thereof except the right to require a particular standard of completed work, the owner is not liable for the negligence of the party to whom the contract is let. *Prest-O-Lite v. Skeel,* (1914) 182 Ind. 593, 106 N.E. 365, 367. This rule has been modified by five judicially created exceptions:

(1) where the contract requires the performance of work intrinsically dangerous;

(2) where a party is by law or contract charged with the specific duty;

(3) where the act will create a nuisance;

(4) where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm;

(5) where the act to be performed is illegal.

*Perry v. NIPSCO,* (1982) Ind.App., 433 N.E.2d 44, 46.

The only exception which conceivably could apply to Mumaw is the fourth. However, cases construing this exception make it inapplicable to this factual situation. The phrase "injury to others" does not apply to employees of independent contractors. Rather, it applies to third persons who are not involved in the work being done who are, therefore, less likely to be aware of its associated dangers. *Hale v. Peabody Coal Co.,* (1976) Ind.App., 168 Ind. App. 336, 343 N.E.2d 316; *Jones v. Indianapolis Power & Light Co.,* (1973) 158 Ind. App. 676, 304 N.E.2d 337. Mumaw is not within the class of persons the exception is designed to protect.

b. The evidence is also insufficient as to Mumaw's alternate theory of liability drawn from Restatement (Second) of Torts § 388 (1965). It reads:

§ 388. Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has resaon to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

The evidence conclusively shows Louisville exercised reasonable care by giving notice of the pipeline's condition to Dismantling before Mumaw started working on it.

Louisville told Mumaw's supervisor the pipes had been used as conduits for diesel fuel and what it had done after the lines were shut down. This information, with specific instructions on how to cut the pipe in a safe manner, was conveyed to Mumaw by his supervisor. When the supplier of a chattel has made known all the information necessary for safe use of the chattel he has exercised his duty to inform.

Save in exceptional circumstances, as where the chattel, no matter how carefully dealt with, is incapable of any safe use, or where the person to whom it is supplied is obviously likely to misuse it, the supplier of a chattel who has given such information is entitled to assume that it will not be used for purposes for which the information given by him shows it to be unfit and, therefore, is relieved of liability for harm done by its misuse to those in the vicinity of its probable use.

Restatement (Second) of Torts § 388 (comment g) (1965). Louisville made full disclo-

sure of the condition of the pipe. The dangers associated with the use of a cutting torch on the pipe were also expressed to Mumaw by his supervisor. When the supplier makes disclosures of the dangers within his knowledge he is not subject to liability under § 388. Restatement (Second) of Torts § 388 (comment 1.) (1965).

The evidence is insufficient to support the verdict under either theory upon which this case was tried.

Reversed and remanded for further proceedings consistent with this opinion.

YOUNG, P.J., and MILLER, J., concur.