**Marilyn PUCALIK, Administratrix of the Estate of Lawrence J. Pucalik, Plaintiff-Appellee,**

v.

**HOLIDAY INNS, INC., Defendant-Appellant.**

No. 85–1382.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1985.

Decided Nov. 13, 1985.

Jonathan D. Moses, Besser & McAllister, Chicago, Ill., for defendant-appellant.

Richard Kuhlman, Foss, Schuman, Drake & Barnard, Chicago, Ill., for plaintiff-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and SWYGERT, Senior Circuit Judge.

RIPPLE, Circuit Judge.

An armed robber shot and killed Lawrence Pucalik while he was working as a security guard in a Holiday Inn hotel in Hammond, Indiana. As administratrix of his estate, Mr. Pucalik's wife brought a wrongful death action against Holiday Inns, Inc. The complaint alleged that Holiday Inns' failure to maintain properly its premises caused Mr. Pucalik's death. The jury returned a verdict for one million two hundred and fifty thousand dollars in favor of the Pucalik estate. The district court denied Holiday Inns' motions for judgment notwithstanding the verdict (n.o.v.), new trial, and remittitur. We affirm the judgment of the district court.

The decedent, Lawrence Pucalik, was a full-time patrolman and firearms instructor with the Hammond Police Department, but during his off-duty hours he had a second job as a plainclothes security guard at the Cline Avenue Holiday Inn. This hotel is located in a high crime area of Hammond, Indiana. The management hired several individuals as plainclothes security guards and installed security locks on the hotel doors. The parties stipulated that the security guards were independent contractors hired to provide protection.

At approximately 2:00 a.m. on November 14, 1980, Mr. Pucalik locked and secured the entire building. Once secured, the only access to the hotel was through the locked front entrance. The lock, installed by the hotel management, was electronically controlled from the registration desk located just inside the front entrance. At approximately 3:00 a.m., while Mr. Pucalik was working in an interior office near the front entrance, an individual rang the front bell. Mr. Pucalik came to the registration desk, unlocked the door and returned to the inner office. The front doors were designed to relock automatically. Susan Harris, the desk clerk, began to register the "guest." She momentarily leaned below the desk to check for vacancies. As she stood up, she noticed a second man entering the hotel through the front door. The second man approached the desk, joined the "guest" and together they demanded that Harris put the money from the cash register into a bag. The robbers then demanded the con-

tents of the cash boxes located directly behind the registration desk.

Mr. Pucalik suddenly returned from the inner office. Confronted with the robbery, he began to retreat. He was not in uniform, carried only a concealed weapon, did not draw his gun, did not identify himself as a police officer and did not attempt to make an arrest. The second robber, who had gained access to the hotel through the door which was supposed to lock automatically, immediately fired two shots which fatally wounded Mr. Pucalik.

Mrs. Marilyn Pucalik, the decedent's wife and administratrix of the estate, filed this wrongful death action[1] against Holiday Inns, Inc. The complaint alleged that Holiday Inns breached a duty owed to Mr. Pucalik by failing to install and maintain certain security devices. There was evidence submitted at trial that the independent security guards and Holiday Inns, Inc. were responsible for maintaining different aspects of security at the hotel. Holiday Inns, Inc. maintained all the security doors. There was also testimony at trial showing that on several occasions prior to November 1980, the guards complained to the hotel management about the unsafe conditions and security system defects at the hotel. Holiday Inns assured the guards that the defects would be corrected. The record indicates that the defendant made no repairs or improvements.

The district judge denied Holiday Inns' motion for a directed verdict. The jury then returned a verdict in favor of the plaintiff for one million two hundred and fifty thousand dollars. The district court denied defendant's post-trial motions for judgment n.o.v., new trial and remittitur. On appeal, Holiday Inns, Inc. presents three distinct arguments: First, the district court should have granted the judgment n.o.v. because, as a matter of law, Mr. Pucalik could not recover from Holiday Inns; second, the district court should have

granted a new trial because the jury received improper instructions on the appropriate standard of care and because the district judge erroneously excluded certain relevant evidence; and third, the district court should have granted remittitur because the jury award was excessive. We shall address each argument separately.

## I

We turn first to Holiday Inns' argument that the district court should have granted a judgment n.o.v. Under our precedent, in diversity cases, we look to the state standard to determine whether the district court should have granted a judgment n.o.v. *Oberman v. Dun & Bradstreet Inc.*, 507 F.2d 349, 352 (7th Cir.1974). The Indiana equivalent to a motion in federal court for a judgment n.o.v. is a motion under Indiana Trial Rule 50. The rule permits the judge to enter a final judgment on the evidence either before or after the jury is discharged. A motion for judgment on the evidence "should be denied unless there is a total absence of evidence or reasonable inferences on at least one element of the plaintiff's case. When assessing the evidence ... it should be viewed in a light most favorable to the party opposing the motion." *Terre Haute First National Bank v. Stewart*, 455 N.E.2d 362, 366 (Ind. App.1983).

Relying heavily on the decision of the Indiana Court of Appeals in *McGee v. Stockton*, 62 Ind.App. 555, 113 N.E. 388 (1916), Holiday Inns, Inc. argues, in essence, that the evidence of record can only support a finding that Mr. Pucalik was an independent contractor who assumed the risk that he would be injured or killed because of unlawful acts of third parties. It argues that, "[a]s the plaintiff in *McGee*, Pucalik controlled the manner of his own performance and was responsible for his own safety." Appellant's Br. 13. The estate, on the other hand, submits that the

---

1. The Indiana wrongful death statute permits the decedent's personal representative to maintain an action when another's wrongful act or omission is the cause of the plaintiff's death.

Ind.Code § 34–1–1–2 (1982). Mr. Pucalik was survived by his wife and a sixteen year old son by a previous marriage.

evidence establishes that security at the Inn was a shared responsibility of the Holiday Inns, Inc. and the security guards. It further argues that the evidence presented at trial demonstrates that Holiday Inns, Inc. affirmatively assumed the responsibility to maintain the door locks and that it failed to fulfill that duty—a failure which resulted in the death of Mr. Pucalik. These two competing characterizations of the case were submitted to the jury. Its verdict reflects its determination that Holiday Inns' failure to meet its responsibility to maintain properly the locking mechanism caused the foreseeable injury to Mr. Pucalik. The record contains sufficient evidence to support such determination and the law of Indiana certainly permits the imposition of liability on such a record.

The parties stipulated that Mr. Pucalik was working as an independent contractor. As this court noted in *Nagler v. United States Steel Corp.*, 486 F.2d 794 (7th Cir. 1973), in Indiana, an owner of property generally is not liable for injuries to employees of an independent contractor when the owner exercises no direction over the work of the employees. *Id.* at 797. However, a contractor is not free from all responsibility for the condition of his property. An employee of an independent contractor is a business invitee. *Id.* at 797 (citing *Broadhurst v. Davis*, 146 Ind.App. 329, 330, 255 N.E.2d 544, 545 (1970)). Therefore, a landowner must "keep its property in reasonably safe condition coextensive with the purpose and intent of the implied invitation." *Perry v. Northern Indiana Public Service Co.*, 433 N.E.2d 44, 49 (Ind.App.1982). Here, the jury determined that Holiday Inns, Inc. had undertaken to take certain steps—including the maintenance of the security locks—to reduce the danger to the security guards and had failed to live up to that undertaking.

Certainly, such a conclusion will support a finding of liability.

Holiday Inns, Inc. submits that the nature of Mr. Pucalik's job—to provide security—alters the duty owed to him by Holiday Inns because he assumed the risk of such an incident. It relies heavily upon *McGee v. Stockton*, 62 Ind.App. 555, 113 N.E. 388 (1916). In *McGee*, the plaintiff, an independent contractor, agreed to test a rope fire escape. During the test, the rope broke and the plaintiff was injured. He sued the owner of the premises claiming negligent maintenance of the rope. The court held that "[a]fter the contract was entered into, appellant was his own boss, and if he undertook to perform the task which he had contracted to do, without taking precautions to ascertain whether the equipment was safe, then he incurred all the risk incident thereto." *Id.* at 563, 113 N.E. at 391. *McGee* merely stands for the general rule that when an independent contractor exercises control over the equipment used to perform the contract, he cannot hold the contractee liable for failure of that equipment; one who assumes a risk inherent in a contractual obligation cannot later complain that the contractee negligently exposed him to that risk.

Whether a plaintiff assumed a risk and is therefore precluded from recovery, is a question of fact. *Kroger Co. v. Haun*, 177 Ind.App. 403, 410, 379 N.E.2d 1004, 1007 (1978). The jury heard extensive evidence and arguments and received proper instructions on the issue of assumption of risk. The verdict reflects its conclusion that Mr. Pucalik did not voluntarily assume the risk that Holiday Inns would fail to repair a defective security lock.[2]

Since the jury's verdict is supported by the evidence of record and the law of Indi-

---

**2.** The defendant brings a Michigan case to the attention of this court. In *Turner v. Northwest Hospital*, 97 Mich.App. 1, 293 N.W.2d 713 (1980), the court denied recovery to a security guard shot to death in a hospital emergency room. The court recognized that, "there may be and no doubt are cases whose facts give rise to a duty owed by someone employing a security company." *Id.* 293 N.W.2d at 715. *Turner* is not controlling and distinguishable. Apparently, the security company in *Turner*, unlike Mr. Pucalik, was responsible for the complete security system at the hospital. In *Turner*, the failure to take adequate precautions was an omission by the security company, not the hospital.

ana, the district court properly denied the defendant's motion for judgment n.o.v.

## II

Holiday Inns argues that it is entitled to a new trial because the jury received improper instructions and the district judge erroneously excluded relevant evidence. The parties had stipulated that Mr. Pucalik was an independent contractor. The district court ruled that, as an independent contractor, Mr. Pucalik was a business invitee and that the owner of the property owed him a duty of ordinary care. Thus, continued the district court, Holiday Inns had to maintain its property in reasonably safe condition for the use of the invitee.

On appeal, the defendant does not quarrel with the general proposition that, under Indiana law, an independent contractor is a business invitee. It argues, however, that the "fireman's rule" transformed Mr. Pucalik's status to that of a licensee when he was confronted with a traditional police situation. The "fireman's rule" is a principle of tort law, recognized in many jurisdictions including Indiana, which classifies police or firemen on property in their official capacity as a licensee rather than an invitee. *Pallikan v. Mark*, 163 Ind.App. 178, 180, 322 N.E.2d 398, 399 (1975). Since the owner of a premises cannot exclude police or firemen from the premises, he is held to a lesser standard of care. *Ryan v. Chicago and Northwestern Railway Co.*, 315 Ill.App. 65, 73, 42 N.E.2d 128, 132 (1942). In Indiana, a property owner must merely refrain from willful and wanton disregard for the safety of a licensee. *Gaboury v. Ireland Road Grace Brethren*, 446 N.E.2d 1310, 1314 (Ind.App.1983).

We find no merit in the defendant's argument. Here, Mr. Pucalik was on the premises of Holiday Inns, Inc. as its business invitee. Unlike the officer in *Weaver v. O'Banion*, 359 So.2d 706, 707 (La.Ct.App. 1978) he never reassumed his official duties as a police officer and never took any official action.[3] The "fireman's rule" does not require us to characterize Mr. Pucalik as a licensee.

■ At trial, Holiday Inns sought to introduce an application for federal benefits filed by Mrs. Pucalik with the Law Enforcement Assistance Administration and several documents that comprised the agency's conclusion that Mr. Pucalik died "in the line of duty." This document was relevant, it was argued, to show that Mr. Pucalik was acting as a police officer and was, therefore, a licensee, not an invitee. We believe that the district judge properly excluded the document. It was compiled for the sole purpose of obtaining benefits under a federal program. The report was conclusory and not based on findings under Indiana law. It also posed a distinct threat to the proper application of the collateral source rule.[4] The probative value of the evidence is clearly outweighed by the potential for confusing and misleading the jury. *See* Fed.R.Evid. 401 and 403.

The district court correctly excluded the report and properly instructed the jury on the duty of care owed Mr. Pucalik. There was no error.

## III

Finally, Holiday Inns seeks remittitur on the ground that evidence submitted at trial did not support the jury's verdict for one million two hundred and fifty thousand dollars.

■ The Indiana wrongful death statute, Ind.Code § 34–1–1–2 (1982), contains a non-

---

**3.** Holiday Inns also cites *Sports Inc. v. Gilbert*, 431 N.E.2d 534 (Ind.App.1982), in an attempt to establish that Mr. Pucalik was acting in his official capacity at the time he was killed. The court in *Sports Inc.* did not discuss the transformation of an off-duty officer from an invitee into a licensee. Rather, it held that an employer, who hired an off-duty police officer as a security guard, could not be liable for the officer's failure to exercise his discretionary power to arrest a drunken patron. *Id.* at 539.

**4.** Indiana recognizes the collateral source rule which prohibits the introduction of evidence of payments from another source to mitigate damages. *Cox v. Winklepleck*, 149 Ind.App. 319, 271 N.E.2d 737 (1971). The federal documents indicated that Mrs. Pucalik was receiving benefits under the federal program.

exclusive list of recoverable damages. Indiana courts have expanded that list to include loss of parental training and guidance and loss of affection to a minor child and widow. *New York Central Railroad Co. v. Wyatt,* 135 Ind.App. 205, 235, 184 N.E.2d 657, 671 (1962). The statute requires a showing of need by the dependent and contribution by the decedent. Partial dependency is sufficient to permit recovery. "Pecuniary loss has been defined as the reasonable expectation of pecuniary benefit from the continued life of the deceased, to be inferred from proof of assistance by way of money, services or other material benefits rendered by the deceased prior to his death." *Lustick v. Hall,* 403 N.E.2d 1128, 1131 (Ind.App.1980). Indiana implies a substantial pecuniary loss to the widow and children of a deceased husband and father especially when the decedent was gainfully employed at the time of his death. *Davis v. United States National Bank,* 98 Ind.App. 580, 586, 186 N.E. 339, 340 (1933).

■ Mr. Pucalik was thirty-three years old. He held two jobs. He had a wife and a sixteen year old son by a previous marriage. The son, while legally in the custody of his mother, spent approximately fifty percent of his time with his father and stepmother. The decedent provided his son with forty dollars a week and was obligated to pay his tuition expenses. The jury considered the evidence and returned a verdict. The district court, after carefully considering the evidence, found that the verdict was not excessive. We agree with the district court.

### CONCLUSION

Holiday Inns owed Mr. Pucalik a duty to use ordinary care in maintaining reasonably safe premises. A jury, after receiving proper instructions, found that Holiday Inns breached that duty and the breach caused Mr. Pucalik's death. The defendant received a fair trial. We affirm the district court's decision to deny defendant's motions for judgment n.o.v., for a new trial and for remittitur.

AFFIRMED.