Earl A. DOUGLASS and Carrie A. Douglass, Husband and Wife, Appellants (Plaintiffs Below),

v.

Floyd S. IRVIN, Appellee (Defendant Below).

No. 64A03–8802–CV–47.

Court of Appeals of Indiana, Third District.

Dec. 27, 1988.

William S. Suarez, Portage, for appellants.

Ronald P. Kuker, Mark E. Schmidtke, Valparaiso, for appellee.

STATON, Judge.

This is a negligence action brought by Carrie A. and Earl A. Douglass for injuries Earl Douglass received as the result of a fall which occurred at the home of Floyd S. Irvin. Summary judgment was entered in the Porter Superior Court in favor of Irvin, from which the Douglass' now appeal. The issues presented for this court's review are:

1. Whether the trial court erred in ruling that no duty was owed by Irvin where the undisputed facts showed Douglass to be an invitee?

2. Whether Douglass was contributorily negligent as a matter of law?

Reversed.

The evidence favoring the non-moving party shows that Floyd Irvin (Irvin) purchased a residence in Valparaiso, Indiana in 1971. Earl Douglass (Douglass) had done handiwork for the previous owner and continued to do the same for Irvin. In 1980, Irvin added a room to the east side of his house which was designed both as a greenhouse and as a hot tub room.

There were two entrances to the hot tub room: french doors leading in from the interior of the house and a sliding door leading out to the patio. The hot tub was situated in the center of the room at floor level. Between the patio door and the hot tub was a line of potted plants, the tops of which were approximately 14 to 16 inches high. In order to utilize the patio door as a means of ingress or egress, the plants had to be stepped over. Shortly after the hot tub room was completed, Irvin showed it to Douglass.

On April 22, 1984, two Porter County police officers received a call at 9:15 p.m. to report to the home of Irvin in response to an alarm at Irvin's residence. After finding the patio door unlocked, the police officers contacted Earl Douglass and asked that he join them at the house. Douglass had been listed at the Porter County Sheriff's Department for many years as the only person to call in the event Irvin was

not available when his burglar alarm went off.

Upon his arrival, Douglass was asked by the police to enter Irvin's residence to ascertain whether anything was taken and turn off the alarm. The parties entered the residence through the patio door leading to the hot tub room. The house was dark due to a power failure and the parties had only one flashlight between them. One officer entered the hot tub room first carrying the flashlight followed by Douglass and the other officer. When Douglass walked into the hot tub room, he apparently stumbled over a plant and fell into the floor-level hot tub, sustaining injuries.

In entering summary judgment in favor of Irvin, the trial court stated that no duty was owed by Irvin, and that no genuine issue of material fact existed which would preclude summary judgment. This appeal ensued.

 Summary judgments are properly granted in cases where no issue of material fact exists and which may be determined as a matter of law. Indiana Rules of Procedure, Trial Rule 56. When reviewing a grant of summary judgment, we determine whether an issue of material fact exists and whether the trial court correctly applied the law. *Creighton v. Caylor–Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1306, *trans. denied.* All evidence must be construed in favor of the non-movant and all doubts as to the existence of a material issue must be resolved against the movant. *Raymundo v. Hammond Clinic Assoc.* (1983), Ind., 449 N.E.2d 276, 280. Summary judgment is also inappropriate where conflicting inferences arise from undisputed facts. *Board of Aviation Commissioners of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151. However, the trial court's ruling must be affirmed on any sustainable theory or basis found in the record. *Lawson v. Public Service Company of Indiana* (1986), Ind. App., 493 N.E.2d 815, 817 *trans. denied.*

In the case at hand, Douglass alleged Irvin was negligent in failing to maintain his home in a reasonably safe condition for invitees and by failing to warn of the dangers involved. In order to recover on a theory of negligence, Douglass must establish that Irvin owed him a duty, that Irvin breached that duty, and that Irvin's breach was the proximate cause of the injuries or losses for which Douglass seeks damages. *Flott v. Cates* (1988), Ind.App., 528 N.E.2d 847, 848.

There is no dispute over Douglass' status as an invitee at the time and place of his injury. An invitee or business invitee is one who enters the land of another,

"... with the express or implied invitation of the owner or occupant, either to transact business with such owner, or occupant, or to do some act which is of advantage to him (the owner or occupant) or of mutual advantage to both licensee and the owner or occupant of the premises. An invitation is implied from such a mutual interest."

*Standard Oil Company of Indiana, Inc. v. Scoville* (1961), 132 Ind.App. 521, 175 N.E.2d 711, 713, *trans. denied; citing Cleveland, etc., R. Co. v. Means* (1915), 59 Ind.App. 383, 104 N.E. 785, *reh. denied.*

 Clearly, under the facts and circumstances presented by the record before us, Douglass occupied the status of an invitee. Douglass went to Irvin's home at Irvin's invitation to do so in the situation presented, acting to the advantage of Irvin alone. The concomitant duty owed by Irvin to Douglass as an invitee is the duty to keep his property in a reasonably safe condition, which duty includes the duty of warning an invitee of latent or concealed perils not known to the invitee. *Downham v. Wagner* (1980), Ind.App., 408 N.E.2d 606, 610, *trans. denied.*

Irvin does not dispute that Douglass' status was that of an invitee, but rather focuses his argument on Douglass' alleged equal or superior knowledge of the dangers involved in entering the hot tub room at the time his injury occurred.

 Both parties to this action have focused much attention on whether an exception to the imposed duty owed by a landowner to an invitee applies in this case. The exception states that, where an invitee

is possessing of knowledge equal or superior to that of the landowner of the hazard causing his injury, the landowner is relieved of any duty which might have otherwise been imposed. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54. Douglass argues that this exception applies only where an independent contractor/employer relationship exists. Irvin argues that this is a general rule of negligence law, applicable to all invitor/invitee relationships.

While it is true that the "equal or superior knowledge" rule most often is applied in cases involving independent contractors, its application is not necessarily limited to those cases. *See Clark v. City of Huntington et al* (1920), 74 Ind.App. 437, 127 N.E. 301. We have previously stated, without limiting our discussion to independent contractor situations, that:

> In general statement, the accepted rule is expressed that the duty to exercise care to keep the property in a reasonably safe condition for invitees or business visitors thereon is coextensive with the invitation. The general statement just referred to encompasses the attending considerations that the duty of the inviter, and his corresponding liability for breach of duty, depends upon the circumstances surrounding the invitation, including the character of the premises the invitee is invited to use, the nature of the invitation, the conditions under which it is extended, and the use of the premises to be made by the invitee. The basis of liability of the inviter for failing to render the premises reasonably safe for the invitee must be predicated upon the superior knowledge of the inviter of the dangers of the premises.

*Hoosier Cardinal Corporation v. Brizius* (1964), 136 Ind.App. 363, 199 N.E.2d 481, 487, *trans. denied.* (Citations omitted.)

The facts most favorable to Douglass (the non-movant) on the question of his awareness of the perils of using the patio door of Irvin's home as a means of ingress show a dispute not resolvable as a matter of law. Both parties testify in their depositions to the fact that Douglass had been in the hot tub room only once, which occasion was four years prior to his injury. Both parties also stated that Douglass' work at Irvin's home was restricted to the west and south sides of the house, whereas the patio and hot tub room were located on the east side. Irvin makes use of the fact that Douglass never saw Irvin or anyone else use the patio door as an entrance or as an exit. This fact, he contends, supports his proposition that Douglass knew that it was not intended as a means of ingress or egress; but it could be inferred from the undisputed facts that the reason for this is that Douglass' work gave him no reason to be on that side of the house. Irvin stated that he had on many occasions used the patio door to exit and enter the house although Douglass was unaware of it. It is undisputed that Douglass had never been warned that he was not to use the patio door as an entrance.

When asked about how he injured himself, Douglass gave the following testimony concerning how he concluded that he had stumbled over a plant:

Q. When was the first time you actually saw that there was a plant or two there?

A. I never saw a plant there, but they always kept them there, and the officer said that I stumbled over plants.

Q. Do you remember him keeping them there from the four years that the room had been there?

A. Yeah.

(Douglass dep., pp. 55–56.)

As damaging as this statement initially sounds to Douglass' case, it could be inferred that Douglass had long since forgotten about the plants lining the hot tub room, only to have his memory rudely refreshed upon his injury. This statement was made in the context of his current recollection, not that at the time of his injury. Douglass stated in his deposition that he had, in fact, forgotten about the plants at the time he was injured.

We find the case of *Broadhurst v. Davis* (1970), 146 Ind.App. 329, 255 N.E.2d 544, to be dispositive of this issue. Therein, we stated:

Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is so frequently held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, *or that after lapse of time he may forget the existence of the condition, even though he has discovered it or been warned;* or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it.... *In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough.*

*Id.* 255 N.E.2d at 545; *citing* Prosser on Torts (3rd Ed.), § 61, p. 402. (Our emphasis.)

■■■■ While it is generally true that the existence of a duty is purely a question of law to be decided by the trial court, often the determination of whether a duty exists is interwoven with factual questions, rendering the ultimate determination of the issue a mixed question of law and fact. *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138, 1141, *trans. denied.* Where the issue of whether a duty exists is a mixed question of law and fact, the ulti-

mate determination of the same is within the province of the jury. After due consideration, we conclude that the issue of duty in the case at hand is a mixed question of law and fact, the facts of which are both disputed and material, thereby rendering this action inappropriate for summary disposition. We cannot say, as a matter of law, that no duty was owed in this case.[1]

Irvin contends that, even if he had a duty, he cannot be held liable because Douglass was contributorily negligent. We conclude that this defense is also a question of fact for the jury.

"Contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable and prudent person in a similar situation would exercise." *Brown v. Northern Indiana Public Service Company* (1986), Ind.App., 496 N.E.2d 794, 798, *trans. denied.* To find that Douglass was contributorily negligent as a matter of law, the undisputed facts would have to show that Douglass' knowledge and appreciation of the dangers, inherent in his enterprise and of Irvin's creation, surpassed that of Irvin. *Id.* The factual disputes that preclude summary judgment on the issue of duty similarly preclude our finding as a matter of law that Douglass was contributorily negligent. It cannot be said, based on the facts before us, that no reasonable person would have acted as Douglass did under the circumstances.

REVERSED.

CONOVER, P.J., concurs.

GARRARD, P.J., dissents with opinion.

GARRARD, Presiding Judge, dissenting.

I agree that Douglass stood in the shoes of a business invitee and that his view of the hot tub room several years before the night of his fall did not as a matter of law charge him with equal knowledge with the

---

1. Should a duty be found to exist, the issues of whether there was a breach of duty and whether its breach was the proximate cause of injury are matters to be determined by the fact finder after weighing the evidence adduced at trial. *Synder v. Mouser* (1971), 149 Ind.App. 334, 272 N.E.2d 627, 634, *trans. denied.*

homeowner. I must nevertheless dissent because the record demonstrates that Douglass was guilty of contributory negligence or incurred risk.

Douglass voluntarily entered the house in the dark when the power was off in the company of two police officers guided only by a flashlight carried by the officer who was ahead of him. Either he should have remembered the potted plants and the hot tub, or he had forgotten them, in which event he was simply entering a darkened room not knowing what was in his path. (As the "keyholder" for the house, Douglass had a key to the kitchen door but forgot to bring it when the police summoned him.)

Moreover, his fall and injuries were not occasioned by some latent defect or deceptive condition requiring special warning. He tripped over a potted plant sitting on the floor. It might well have been a coffee table or some other article of furniture. The problem was that he did not see it in the dark.

As Judge Staton explained in *Petroski v. NIPSCO* (1976), 171 Ind.App. 14, 354 N.E. 2d 736, 745:

> [I]n those cases when the plaintiff voluntarily encounters a known *reasonable* risk exercising unusual care for his safety, there may be no contributory negligence on his part, but his conduct may still be characterized as incurral of the risk. (Emphasis in original).

I find the facts here very close to those in *Clark v. City of Huntington* (1920), 74 Ind.App. 437, 127 N.E. 301 where the court determined that the plaintiff's decedent, in attempting to negotiate a roadway in the dark, took the risk upon himself and plaintiff could not recover.

I would therefore affirm the trial court.