**Roger Curtis MERRITT,
Plaintiff–Appellant,**

v.

**BETHLEHEM STEEL CORPORATION, a foreign corporation licensed to do business in the State of Indiana, Defendant–Appellee.**

No. 88–2249.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1988.

Decided May 22, 1989.

William S. Spangler, Spangler Jennings Spangler & Dougherty, Merrillville, Ind., for plaintiff-appellant.

Mark S. Dym, Gessler Flynn Laswell Fleischmann Hughes & Socol, Ltd., Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Roger Merritt, an employee of an independent contractor, brought this diversity action against Bethlehem Steel Corporation, as the landowner/contractee, to recover for injuries he sustained while working at Bethlehem's plant in Burns Harbor, Indiana. The district court's grant of summary judgment for Bethlehem forms the basis of the appeal.

## FACTS

Bethlehem Steel owns and operates a steel manufacturing plant in Burns Harbor, Indiana, which requires the use of high voltage electricity. As part of its integrated operation, Bethlehem maintains on its property the lines, towers and insulators necessary to supply that electricity.

On March 27, 1984, Bethlehem contracted with Petronol Company, Inc., advertised professionals in cleaning electrical equipment while the lines remain electrically charged, to clean and refurbish various electric towers and insulators at the Burns Harbor plant. The contract specifically provided that Petronol was "to supply all labor, equipment and material to clean the ... *energized* lines." It is undisputed that under the terms of the contract, Petronol was an independent contractor.

Roger Merritt was employed by Petronol as part of the cleaning crew at the Burns Harbor plant when he fell and touched an energized line. As a result of both the electrical shock and his fall from the tower on which he was working, Merritt sustained serious personal injuries. It is undisputed that Merritt knew the lines were energized when he undertook the job, that his safety belt was not attached, and that there were signs posted in the area warning "Danger 13,800 Volts".

While Merritt acknowledges that a landowner/contractee will generally not be liable for injuries to an employee of an independent contractor resulting from the *contractor's* negligence, *Johns v. New York Blower Co.*, 442 N.E.2d 382, 384 (Ind.App. 1982); *Perry v. Northern Indiana Public Service Co.*, 433 N.E.2d 44, 46 (Ind.App. 1982); *Denneau v. Indiana & Michigan Electric Co.*, 150 Ind.App. 615, 277 N.E.2d 8, 12 (1971), he contends that it is Bethlehem's own negligence and not that of the contractor which forms the basis of liability in the present case. *See, i.e., Ruhs v. Pacific Power & Light*, 671 F.2d 1268, 1272 (10th Cir.1982). Merritt's claim is premised on the presumption that Bethlehem had the ability and the duty to alternately deenergize the electrical lines nearest the work activity to protect Petronol employees from injury, and that it failed to meet that duty. Merritt proposes three sources for such a duty: (1) the common law, (2) Bethlehem's contract with Petronol, and (3) various federal and state safety regulations.

In granting Bethlehem's motion for summary judgment, the district court found that neither the common law nor the contract between Bethlehem and Petronol imposed upon Bethlehem any duty to deenergize the lines. While the court found that the safety regulations promulgated under the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 *et seq.*, and the Indiana Occupational Safety and Health Act (IOSHA), I.C. 22-8-1.1-1 *et seq.*, specifically the National Electrical Safety Code and National Electrical Code, applied to Bethlehem with respect to Merritt, *Teal v. E.I. DuPont de Nemours and Co.*, 728

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

F.2d 799, 804–05 (6th Cir.1984); *Marshall v. Knutson Construction Co.*, 566 F.2d 596, 599 (8th Cir.1977), the regulations could not be used to expand or otherwise affect Bethlehem's common law duties or liabilities under a negligence per se theory, or as evidence of an expanded standard of care. 29 U.S.C. § 653(b)(4); I.C. 22–8–1.1–48.3; *Hebel v. Conrail, Inc.*, 475 N.E.2d 652, 658 (Ind.1985). The court concluded that "even as evidence of negligence, no jury question would be presented [as] Bethlehem's duty of care was adequately met by warning Merritt that the lines were energized." For the following reasons, we now affirm the judgment of the district court.

### BETHLEHEM'S COMMON LAW DUTY

■ Under the common law, Bethlehem owes a duty to its business invitees to keep and maintain the job site in a reasonably safe condition. *Bogard v. Mac's Restaurant, Inc.*, 530 N.E.2d 776, 777 (Ind.App. 1988); *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51, 54 (Ind.1985); *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind.App.1983). Merritt maintains that where the contracted work involves a "dangerous instrumentality" such as electricity and creates a "peculiar unreasonable risk of harm to others," that duty becomes nondelegable and imposes upon a landowner/contractee the responsibility for taking reasonably necessary steps to prevent the harm. Restatement (Second) of Torts, § 413, pp. 384–85 (1965); *Hixon v. Sherwin–Williams Co.*, 671 F.2d 1005, 1010 (7th Cir.1982); *Ruhs*, 671 F.2d at 1272; *Curl v. Bethlehem Steel Corp.*, 181 Ind.App. 132, 390 N.E.2d 709, 711 (1979); *Denneau*, 277 N.E.2d at 12. He concludes that such steps include deenergizing the power lines.

The district court found, however, that Bethlehem's duty with respect to Petronol's employees was only coextensive with the purpose and intent of the invitation, *Pucalik v. Holiday Inns, Inc.*, 777 F.2d 359, 362 (7th Cir.1985); *Perry v. Northern Indiana Public Service Co.*, 433 N.E.2d 44, 49 (Ind.App.1982); *Hoosier Cardinal Corp. v. Brizius*, 136 Ind.App. 363, 199 N.E.2d 481, 487 (1964), and that, given the nature of the invitation which required that the work be performed while the lines remained energized, Bethlehem's only duty was to warn of latent defects in or on the premises. *Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219, 1221 (Ind.App. 1983). Assuming that the dangers of electricity could be considered "latent," the district court found that Bethlehem had adequately met its duty by posting signs warning of that danger. We concur.

[T]he duty of the inviter, and his corresponding liability for breach of duty, depends upon the circumstances surrounding the invitation, including the character of the premises the invitee is invited to use, the nature of the invitation, the conditions under which it is extended, and the use of the premises to be made by the invitee. The basis of liability of the inviter for failing to render the premises reasonably safe for the invitee *must be predicated upon the superior knowledge of the inviter of the dangers of the premises.*

*Douglass v. Irvin*, 531 N.E.2d 1214, 1217 (Ind.App.1988) (quoting *Hoosier Cardinal Corp.*, 199 N.E.2d at 487) (emphasis added). *See also Bogard*, 530 N.E.2d at 778; *Wingett*, 479 N.E.2d at 54. Where a dangerous condition or defect exists on the property of which the landowner is aware and which is not likely to be discovered by an invitee, the landowner has a duty to either warn the invitee of the condition or correct the condition. *Bogard*, 530 N.E.2d at 777; *Louisville Cement Co.*, 448 N.E.2d at 1221. "The owner discharges his duty to the invitee if he follows either course." *Louisville Cement Co.*, 448 N.E.2d at 1221; *see also Downham v. Wagner*, 408 N.E.2d 606, 610 (Ind.App.1980).

Where an invitee is possessing of knowledge equal or superior to that of the landowner of the hazard causing the injury, the landowner is relieved of any duty which might have otherwise been imposed.

*Douglass*, 531 N.E.2d at 1217.

Merritt has failed to demonstrate that Bethlehem had the superior knowledge nec-

essary to impose liability. As we have previously noted, Petronol was a self-professed expert in cleaning electrical equipment for industrial facilities and utilities while the lines remained energized. Its contract with Bethlehem expressly provided that the work would be performed under those circumstances. Merritt was also aware of the fact that the lines were energized when he undertook the job. There is no indication that he did so under duress. "One who assumes a risk inherent in a contractual obligation cannot later complain that the contractee negligently exposed him to that risk." *Pucalik*, 777 F.2d at 362; *see also Meadowlark Farms, Inc. v. Warken*, 176 Ind.App. 437, 376 N.E.2d 122, 133 (1978).[1] Under the circumstances, Bethlehem was relieved of any duty which it might have toward Merritt. *See Douglass*, 531 N.E.2d at 1217; *Wingett*, 479 N.E.2d at 54.[2]

That the contracted work may have been "intrinsically dangerous," involved a "dangerous instrumentality," or created a "peculiar unreasonable risk of physical harm to others" does not impose upon Bethlehem any greater duty. Under Indiana law, the intrinsically dangerous work exception to the general rule of nonliability does not extend to employees of an independent contractor performing the work. *Bogard*, 530 N.E.2d at 779; *Texas Eastern Transmission Corp. v. Seymour National Bank*, 451 N.E.2d 698, 699 (Ind.App.1983), *trans. denied; Johns v. New York Blower Co.*, 442 N.E.2d 382, 388 (Ind.App.1982).[3] The same is true of the "injury to others" exception articulated in Restatement (Second) of Torts, § 413. "[The] language 'injury to others' has been held to mean injury to third persons who are not involved in the work being done and less likely to be aware of the associated dangers." *Bogard*, 530 N.E.2d at 779; *see also Louisville Cement Co.*, 448 N.E.2d at 1222; *Johns*, 442 N.E.2d at 387 n. 7; *Hale v.*

1. Whether the plaintiff assumed the risk is generally a question of fact for the jury. *Meadowlark Farms, Inc.*, 376 N.E.2d at 133; *but cf. Pierce v. Clemens*, 113 Ind.App. 65, 46 N.E.2d 836, 841 (1942). Under the circumstances, however, Merritt could be found to have assumed the risk as a matter of law. The district court reached the same conclusion in its order of April 6, 1987, granting Bethlehem's motion in limine to preclude evidence or argument regarding a duty to deenergize the lines.

2. Even if we assume, as did the district court, that the dangers of electricity are latent, *but cf. Howard v. H.J. Ricks Construction Co., Inc.*, 509 N.E.2d 201, 206 (Ind.App.1987) (if low-hanging electric lines were a defect, they were a patent defect which could have been discovered by the exercise of ordinary care and prudence); *Holecek v. E–Z Just*, 124 Ill.App.3d 251, 79 Ill.Dec. 792, 794–95, 464 N.E.2d 696, 698–99 (1984) (danger of electricity common knowledge); *Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 343 N.E.2d 465, 471 (1976) (danger of electricity common knowledge), Bethlehem discharged its duty as a landowner by warning Merritt of that danger. *Bogard*, 530 N.E.2d at 777; *Louisville Cement Co.*, 448 N.E.2d at 1221.

3. In *Johns v. New York Blower Co.*, 442 N.E.2d 382, 388 (Ind.App.1982), the Court found that there were two valid reasons for refusing to extend the "intrinsically dangerous work" exception to employees of independent contractors:

> First, the principal reason for the development of the liability doctrine ... was to prevent the employer-owner from escaping liability on inherently dangerous work or shifting that liability to his potentially less solvent contractor. Under modern law the employees of the contractor in the vast majority of instances are covered by Workmen's Compensation laws, and the owner does not escape liability since, in effect, he pays the premium for the Workmen's Compensation coverage as part of his contract price.
>
> Secondly, had the owner's own employee been injured performing the work, the owner's liability would be limited by the Workmen's Compensation laws. There does not appear to be any valid reason to subject the owner to greater liability for employing an independent contractor to perform the work than he would have had if he had employed his own servants.

442 N.E.2d at 388. *But cf. Johns*, 442 N.E.2d at 388 (Stanton, J., concurring) ("[C]overage by workmen's compensation is irrelevant to the issue of liability. If there is a non-delegable duty, a third party is liable for the injuries and damages resulting regardless of workmen's compensation coverage."); *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 942–43 (Swygert, J., dissenting) (under controlling Illinois case law, employers of independent contractors owe a nondelegable duty to contractor's employees when those employees are involved in inherently dangerous work. *Chicago Economic Fuel Gas v. Myers*, 168 Ill. 139, 146, 48 N.E. 66, 68–69 (1897)).

*Peabody Coal Co.,* 168 Ind.App. 336, 343 N.E.2d 316, 323–24 (1976).

### CONTRACTUAL DUTY

■ Alternatively, Merritt contends that under the terms of its contract with Petronol, Bethlehem assumed responsibility for his safety and a duty to deenergize the lines. Merritt contends that by incorporating its General Rules for Contractors into the Petronol contract, Bethlehem voluntarily undertook to render services to Petronol which were necessary to protect Merritt from injury, including safety supervision and the enforcement of safety procedures; that it failed to provide those services; and is therefore liable for Merritt's injuries. *See* Restatement (Second) of Torts, § 324A, p. 142 (1965) ("One who undertakes, gratuitously ... to render services to another which he should recognize as necessary for the protection of a third party ... is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if ... (b) he has undertaken to perform a duty owed by the other to the third person ...")

Under Bethlehem's General Rules for Contractors, contractors are required to "cooperate" with Bethlehem's designated representative(s) "to assure the conduct of safe operations." A contractor is specifically required to meet with company representatives to discuss "safety on the job, and any hazards which may be peculiar to the job"; to check with the designated representative each morning before beginning work to acquaint himself with any changed conditions; and, to comply with all federal, state, county, and municipal laws, codes and ordinances. (Rules 1.3–1.6). The Rules further provide that "[o]nly employees acceptable to Bethlehem shall be used in the operation of any type of equipment," and that Bethlehem may stop or suspend work in the event the contractor fails to comply with the rules or instructions regarding safe practices. (Rules 1.8 and 1.2). The crux of Merritt's argument, however, centers around Rule 2.1.3 which provides:

Persons working on electric lines ... shall be protected by locking out [deenergizing] or posting a flag or a tag on the main switch handle controlling the circuit ...

Merritt maintains that these provisions imposed upon Bethlehem not only a duty to deenergize the power lines, but to instruct and approve all Petronol employees before allowing them to work near those lines; and that Bethlehem breached its duty in both respects. We cannot agree.

Merritt's interpretation of the contract is overly restrictive. Viewing the contract as a whole, we find nothing which would give Bethlehem the control of the job site necessary to destroy the contractee-independent contractor relationship, and impose upon Bethlehem any responsibility for Merritt's safety beyond that of a landowner/contractee. To the contrary, Bethlehem's contract with Petronol expressly states that:

The Contractor [Petronol] shall be solely responsible for the protection of the Work and of all equipment and material to be used therein.... *The Contractor* shall properly guard the Work in order to prevent any person or persons being injured by it or by the condition of the Site and shall comply with the provisions of all applicable laws, ordinances, rules and regulations of any public body relating to the protection of or safe performance of the Work ... *[t]he Contractor* shall further comply with the provisions of the "General Safety Rules for Contractors"....

The Company [Bethlehem] assumes no obligation to furnish to the Contractor any tools, equipment or materials for the performance of the Work ...

(Emphasis added). The "assumption by contract" exception to the general rule of nonliability is not triggered merely because Bethlehem may have a right to inspect and test the work, approve of the work and/or employees of the independent contractor or require the contractor to follow company safety rules. *See Perry,* 433 N.E.2d at 48; *Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 363 N.E.2d 1266, 1274 (1977).

## STATUTORY DUTY

■ As his final argument, Merritt contends that under the Occupational Safety and Health Act (OSHA), the National Electrical Safety Code (NESC), and the National Electrical Code (NEC), Bethlehem owed a duty to *all* employees, including employees of independent contractors, to deenergize the lines.

Whether the safety standards of OSHA, the NESC and the NEC apply to landowner/contractees such as Bethlehem is an issue we need not resolve.[4] For even if we assume that they are applicable to Bethlehem (that Bethlehem is Merritt's indirect or statutory "employer" within the meaning of OSHA and the NESC/NEC), and that those standards were violated, neither OSHA nor the NESC/NEC can be used to expand or in any other manner affect Bethlehem's common law or statutory liability for an employee's injuries arising out of, or in the course of, his employment. 29 U.S.C. § 653(b)(4); I.C. 22–8–1.1–48.3.[5] Merritt seeks to create a private right of action where none exists. *See Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976–77 (5th Cir.

1975); *Russell v. Bartley*, 494 F.2d 334, 335–36 (6th Cir.1974); *Hebel*, 475 N.E.2d at 658.

Under governing Indiana law, Workmen's Compensation provides Merritt's exclusive remedy. *See Clem v. Steveco, Inc.*, 450 N.E.2d 550 (Ind.App.1983) (Exclusivity provision of Workmen's Compensation Act [I.C. 22–3–2–6] abrogates all other rights and remedies of an employee against an employer where injury comes within the Act's coverage.) I.C. 22–3–2–6 provides:

The rights and remedies granted to an employee [under the Workmen's Compensation Act] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee ... at common law or otherwise, on account of such injury or death ...

It would be inconsistent for us to find that Bethlehem was an "employer" within the meaning of § 654(a) and the NESC and NEC and not afford it similar status under the Indiana Workmen's Compensation Act. I.C. 22–3–2–1 *et seq. See Anderson v.*

---

**4.** A difference of opinion exists as to whether safety regulations promulgated under OSHA and similar state legislation apply to every "employer" at the worksite with respect to every employee, including employees of other employers. The Sixth Circuit in *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799 (8th Cir.1984), held that: (1) "Pursuant to [29 U.S.C.] Sec. 654(a)(1) [the general duty provision], *every* employer owes a duty of reasonable care to protect *his* employees from recognized hazards that are likely to cause death or serious bodily injury." (2) In contrast, "the class of employers who owe a duty to comply with the [specific duty provision, 29 U.S.C. § 654(a)(2) ] is defined with reference to control of the workplace and opportunity to comply with the OSHA regulations." *See also, Marshall v. Knutson Construction Co.*, 566 F.2d at 601. (3) "An employers' responsibilities under the Act depend upon which duty provision the employer is accused of breaching." (4) "Once an employer is deemed responsible for complying with OSHA regulations, it is obligated to protect *every* employee who works at its workplace," including employees of independent contractors. *Teal*, 728 F.2d at 804–05. Similarly in *Marshall v. Knutson Const. Co.*, the Eighth Circuit applied the specific duty provision of § 654(a)(2) to general contractors who "normally have the responsibility and the means to assure that other contractors fulfill their obligations with respect to employee

safety ..." 566 F.2d at 599–600. *But cf. Horn v. C.L. Osborn Contracting Co.*, 591 F.2d 318 (5th Cir.), *reh'g denied*, 595 F.2d 1221 (5th Cir.1979) (word "employer" as used in § 654(a) does not envelope general contractors as joint or statutory employers of an independent subcontractor's employees; hence, general contractor had no duty under § 654(a) to provide employees of independent subcontractor with a safe working environment.)

While Merritt cites *Ruhs v. Pacific Power & Light*, 671 F.2d 1268 (10th Cir.1982) in support of his position that the NESC is applicable to Bethlehem we would note that the Tenth Circuit in *Ruhs* merely assumed for purposes of its opinion that the NESC applied, and directed the district court on remand to clarify the record to show whether the NESC was statutorily mandated. 671 F.2d at 1273.

**5.** 29 U.S.C. § 653(b)(4) provides:
Nothing in this chapter shall be construed to supercede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.
I.C. 22–8–1.1–48.3 contains similar language.

*Marathon Petroleum Co.,* 801 F.2d 936, 941 (7th Cir.1986). Had one of Bethlehem's own employees performed the work in question and been injured, his sole remedy would have been under the Workmen's Compensation Act. I.C. 22-3-2-6. He would have no right to additional compensation under the common law, OSHA or the IOSHA. 29 U.S.C. § 653(b)(4); I.C. 22-8-1.1-48.3; *Jeter,* 507 F.2d at 976-77; *Russell,* 494 F.2d at 335-36; *Hebel,* 475 N.E.2d at 657-58. We find no reason to subject Bethlehem to greater liability simply because it chose to employ an independent contractor to do the work. *See Johns v. New York Blower Co.,* 442 N.E.2d at 388. As Merritt's remedy against Petronol is limited to Workmen's Compensation, so too is his remedy against Bethlehem.

AFFIRMED.